IRA LEVY (*pro hac vice*)
ILevy@goodwinlaw.com
JAMES P. BREEN (*pro hac vice*)
JamesBreen@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

JAMES LIN (SBN 310440)
JLin@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

NEEL CHATTERJEE (SBN 173985)
NChatterjee@goodwinlaw.com
DANIEL R. MELLO JR. (SBN 325714)
DMello@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

*Attorneys for Plaintiff*
*Voodoo SAS*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VOODOO SAS,<br><br>    Plaintiff,<br><br> v.<br><br>SAYGAMES LLC,<br><br>    Defendant. | Case No.  5:19-cv-7480-BLF-SVK<br><br>**PLAINTIFF VOODOO SAS'**<br>**OPPOSITION TO DEFENDANT**<br>**SAYGAMES LLC'S MOTION TO**<br>**DISMISS**<br><br>Date:  May 28, 2020<br>Time:  9:00 a.m.<br>Floor:  Courtroom 3 – 5th Floor<br>Judge:  The Hon. Beth Labson Freeman<br><br>Filed concurrently herewith:<br>1. Declaration of Ira J. Levy<br>2. Declaration of Nicolas Chandou<br>3. [Proposed] Order<br>4. Certificate of Service<br><br>Trial date:  N/A |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

    A.    SayGames Copied Voodoo's *Shape Shifter 3D* And, Two Weeks Later, Released Its Own Copycat Game, *Jelly Shift*. .......................................... 2

    B.    SayGames Copied Voodoo's Advertisement For *Shape Shifter 3D* And, Five Days Later, Used It To Advertise *Jelly Shift*. .................................. 3

    C.    SayGames Copied Voodoo's Icon For *Shape Shifter 3D* To Package *Jelly Shift* In A Confusingly Similar Icon. ........................................... 4

    D.    All These Actions Were Directed At The United States And California. .............. 4

    E.    SayGames Itself Concedes That Forum Is Proper Here. ................................... 6

III.  ARGUMENT ......................................................................................................... 7

    A.    The Complaint Sets Forth A *Prima Facie* Showing That SayGames Is Subject To The Jurisdiction Of This Court. ................................................. 7

        1.    This Court has specific personal jurisdiction over SayGames. ................... 7

            a.    SayGames purposefully directs its activities here........................... 8

            b.    Voodoo's claims arise out of SayGames' conduct here................ 12

            c.    SayGames offers no "compelling case" for why the exercise of jurisdiction would be unreasonable here. ................................. 12

        2.    SayGames has nation-wide contacts to the United States........................ 13

    B.    The Complaint Sufficiently Alleges That SayGames Infringed Voodoo's Copyrights In *Shape Shifter 3D* And In Its Video Ad For *Shape Shifter 3D*........ 14

        1.    Voodoo's Complaint alleges that SayGames copied *Shape Shifter 3D*. .......................................................................................... 15

        2.    SayGames copied Voodoo's video ad that marketed *Shape Shifter 3D*. .......................................................................................... 19

    C.    SayGames' Preemption Argument Is Inapposite. ........................................ 20

    D.    Voodoo Plausibly Alleges That SayGames Packaged *Jelly Shift* In A Confusingly Similar Icon. ....................................................................... 20

    E.    The Complaint Also Plausibly Alleges That SayGames Falsely Advertised *Shape Shifter 3D* as Its Own. .............................................................. 22

    F.    SayGames' False Advertisement Is Equally Actionable Under The FAL............ 24

    G.    Voodoo Sufficiently Pleads Unfair Competition. ....................................... 25

IV.   CONCLUSION .................................................................................................... 25

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM Energy & Constr., Inc. v. Ripley,*
   348 F. Supp. 3d 1038 (C.D. Cal. 2018) ................................................................ 24

*Alpi Int'l, Ltd v. Anga Supply, LLC,*
   118 F. Supp. 3d 1172 (N.D. Cal. 2015) ................................................................ 15

*Antonick v. Elec. Arts, Inc.,*
   841 F.3d 1062 (9th Cir. 2016) ............................................................................. 15

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995) .................................................................................. 7

*Basevi, Inc. v. Acorn Co.,*
   No. CV 08-cv-07145-AHM, 2009 WL 764532 (C.D. Cal. Mar. 19, 2009) ............... 14

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ............................................................................. 22

*Brayton Purcell LLP v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2010) ............................................................................... 8

*Cabell v. Zorro Prods. Inc.,*
   No. 15-CV-00771-EJD, 2017 WL 2335597 (N.D. Cal. May 30, 2017) .................... 16

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
   251 F.3d 1252 (9th Cir. 2001) ............................................................................. 21

*Clifton v. Pearson Educ., Inc.,*
   No. 11-CV-03640-EJD, 2012 WL 1565236 (N.D. Cal. May 2, 2012) ..................... 14

*Dole Food Co. v. Watts,*
   303 F.3d 1104 (9th Cir. 2002) ............................................................................. 12

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.,*
   411 F. Supp. 3d 905 (N.D. Cal. 2019) ............................................................ 23, 24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) ............................................................................................ 17

*Free Speech Sys., LLC v. Menzel,*
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ............................................................... 14

*Goes Int'l, AB v. Dodur Ltd.,*
   No. 14-cv-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) ........ 10, 11, 12, 13

*Goes Int'l AB v. Wuzla,*
   No. CV 13-7102 PA (Ex), 2014 WL 12617386 (C.D. Cal. Apr. 7, 2014) ........ 10, 12, 13

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

ii

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007)............................................................................................ 8, 13

*Iglesia Ni Cristo v. Cayabyab*,
    No. 18-CV-00561-BLF, 2020 WL 1531349 (N.D. Cal. Mar. 31, 2020) ............................... 25

*Jobscience, Inc v. CVPartners, Inc.*,
    No. C 13-04519 WHA, 2014 WL 93976 (N.D. Cal. Jan. 9, 2014)....................................... 14

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
    71 F.3d 996 (2d Cir. 1995) ................................................................................................ 17

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012).............................................................................................. 17

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................................................................ 24

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985)............................................................................................ 21

*Loomis v. Cornish*,
    836 F.3d 991 (9th Cir. 2016).............................................................................................. 15

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011)......................................................................................*passim*

*Moldex-Metric, Inc. v. McKeon Prods., Inc.*,
    891 F.3d 878 (9th Cir. 2018).............................................................................................. 20

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) .............................................................................. 25

*Pazarlama A.S. d/b/a Good Job Games v. SayGames LLC*,
    Case No. 3:19-cv-07916-EMC (N.D. Cal. Dec. 3, 2019) ................................................... 4, 8

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)............................................................................................ 13

*Reed Constr. Data Inc. v. McGraw-Hill Companies, Inc.*,
    49 F. Supp. 3d 385 (S.D.N.Y. 2014)............................................................................... 23, 24

*Robinson v. HSBC Bank USA*,
    732 F. Supp. 2d 976 (N.D. Cal. 2010) ................................................................................ 24

*San Diego Cty. Credit Union v. Citizens Equity First Credit Union*,
    360 F. Supp. 3d 1039 (S.D. Cal. 2019)..........................................................................*passim*

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)............................................................................................... 7

*Shuffle Master, Inc. v. Avalinx, Inc.*,
    No. CV 12-7473 DSF, 2012 WL 12888850 (C.D. Cal. Nov. 13, 2012)................................. 12

Goodwin Procter LLP
Attorneys at Law

*Skidmore v. Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ................................................................................................ 17

*Smith v. AMC Networks, Inc.*,
    No. 18-CV-03803-LHK, 2019 WL 402360 (N.D. Cal. Jan. 31, 2019) .................................... 16

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) .......................................................................................... 22, 23

*Spry Fox LLC v. LOLApps Inc.*,
    No. 12-cv-00147-RAJ, 2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ............................. 16

*State Farm Fire & Cas. Co. v. Super. Ct.*,
    45 Cal. App. 4th 1093 (1996) .................................................................................................. 25

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015) ........................................................................................ 7

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) .................................................................................................. 16

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) .................................................................................................................. 20

*Trendsettah USA Inc. v. J A Tobacco Corp.*,
    No. CV-13-04194 BRO, 2013 WL 12131742 (C.D. Cal. Sept. 11, 2013) ............................. 21

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ................................................................................................................ 20

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ............................................................................................ 14, 15

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................................ 22

*Zherebko v. Reutskyy*,
    No. C 13-00843 JSW, 2013 WL 4407485 (N.D. Cal. Aug. 12, 2013) ................................... 10

**Statutes**

15 U.S.C. § 1125(a)(3) ................................................................................... 2, 20, 22, 24, 25

17 U.S.C. § 101 *et seq.* .............................................................................................. 1, 20

Bus. & Prof. Code § 17200 ................................................................................................ 2, 25

Bus. & Prof. Code § 17500 ................................................................................................ 2, 24

Cal. Civ. Code § 1789.100 *et seq.* .................................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ......................................................................................... 13, 14

Fed. R. Civ. P. 9(b) ..................................................................................................... 22

Fed. R. Civ. P. 12(b) .............................................................................................. 7, 16

Goodwin Procter LLP
Attorneys at Law

1    **I.**    **INTRODUCTION**

2       SayGames' Motion fails to overcome the well-pled allegations in Voodoo's Complaint.

3   *First*, SayGames' jurisdictional challenge should be denied because it concedes the United States

4   is the correct forum to resolve the infringement claims in this case, and the known facts as set

5   forth in Voodoo's Complaint and affidavits establish that California is the proper forum for this

6   dispute.  SayGames' concession is no surprise because SayGames not only distributes *Jelly Shift*

7   through Apple and Google, but it also does so by affirmatively targeting users in the United States

8   and in California.  Indeed the sole geographic market in the United States referenced in *Jelly*

9   *Shift's* customer Terms of Use and Privacy Policy is California.  Further, SayGames directs its

10   advertisements to users located here, enters into commercial agreements with businesses and

11   persons here, and benefits from the protections of the law of this forum.  SayGames has been very

12   successful in getting users here to download and use its infringing game, and has profited

13   handsomely off those activities purposefully directed here.

14       *Second*, having taken *Shape Shifter 3D*, replicated its original creative elements in *Jelly*

15   *Shift*, and timed the release of *Jelly Shift* so as to disrupt *Shape Shifter 3D's* commercial success,

16   SayGames now argues that it cannot be held liable because *Shape Shifter 3D* is unprotectable

17   work.  This argument is flawed.  At bottom, SayGames' non-infringement argument improperly

18   dissects *Shape Shifter 3D* and analyzes the whole of the work in piecemeal fashion.  The Motion

19   separates each element of the game into its constituent parts (a shape, a color, a path of travel, an

20   obstacle), examines it in isolation of the context in which it rests, and concludes that because

21   those particular elements are unprotectable, so too must be the game itself.  U.S. copyright law

22   supports no such elemental, formulaic approach to resolving infringement claims.  Indeed and to

23   the contrary, the Copyright Act protects the very *combination*, *organization*, and *presentation* of

24   these elements—even elements that may not by themselves be protectable.  For the same reasons,

25   SayGames' replication of Voodoo's advertising video is infringing.  SayGames cloned that video,

26   which Voodoo created to market and promote *Shape Shifter 3D*, placed it in advertising for *Jelly*

27   *Shift*, and depicted the same frames, artwork, and creative expressions to promote its own

28   infringing game.  The Motion ignores these facts pled in the Complaint.

Goodwin Procter LLP
Attorneys at Law

*Third*, to further sow confusion in the marketplace for users seeking to download and play *Shape Shifter 3D*, Voodoo deliberately packaged *Jelly Shift* in a similar icon that replicated the same distinctive elements of the *Shape Shifter 3D* icon.  The Complaint states a claim for trade dress infringement because that icon is non-functional, it identifies the source of *Shape Shifter 3D* as belonging to Voodoo, and because of SayGames' actions, the *Jelly Shift* icon caused or is likely to cause confusion among the consuming public as to the source of these two products.

*Fourth*, Voodoo alleges that in the days following its efforts to promote *Shape Shifter 3D*, SayGames took the advertising video that Voodoo created to market its newly released game.  SayGames replicated the exact same video—even down to the frame—in its own advertising video to promote *Jelly Shift*.  SayGames did so, even though the gameplay depicted in that video depicted *Shape Shifter 3D*, not *Jelly Shift*.  In other words, SayGames falsely advertised a product that it did not create and does not own, but nevertheless has used that advertising to promote the product to depict as its own.  These actions violate Lanham Act § 43(a) and the California False Advertising Law ("FAL").

Finally **fifth**, Voodoo sufficiently pleads that these actions violate the California Unfair Competition Law ("UCL") because they are unlawful, they are unfair, and they are fraudulent.

In all, Voodoo sets forth a *prima facie* showing that this Court has jurisdiction over SayGames.  The Complaint also sufficiently alleges that SayGames' actions infringed Voodoo's copyrights and trade dress, falsely advertised its product at the detriment of Voodoo, and unfairly competed against Voodoo.  For these and the reasons further discussed below, Voodoo respectfully requests an Order from this Court denying SayGames' Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim.

## II. <u>BACKGROUND</u>

### A. SayGames Copied Voodoo's *Shape Shifter 3D* And, Two Weeks Later, Released Its Own Copycat Game, *Jelly Shift*.

Voodoo's Complaint sets forth the following allegations.  Voodoo is a French mobile gaming company that creates, develops, and publishes games in a niche market of mobile gaming often referred to as "hyper casual games."  Compl. ¶ 13.  Among Voodoo's original games is

*Shape Shifter 3D*, an interactive three-dimensional mobile scrolling game that Voodoo developed and released on May 23, 2019.  *Id.* ¶ 19.  *Shape Shifter 3D* tasks players with navigating a dynamic avatar through a series of successively challenging obstacles.  *Id.* ¶ 20.  A mere two weeks later, on or about June 7, 2019, Defendant SayGames, a Belarusian mobile gaming competitor released its own copycat game, *Jelly Shift*, on the Apple App Store.  *Id.* ¶ 27.  It later released *Jelly Shift* on the Google Play Store on or about August 13, 2019.  *Id.*

*Jelly Shift* is a clone of *Shape Shifter 3D*.  *Id.* ¶¶ 37–43.  Not only does *Jelly Shift* mimic the entire framework and style of gameplay in *Shape Shifter 3D*, but it also so closely copies the original, creative expression and unique elements of *Shape Shifter 3D,* that the two games are nearly indistinguishable.  *Id.*  Indeed, the Complaint sets forth side-by-side screenshot comparisons of the two games that illustrate the similarity.  *Id.* ¶ 37.  As depicted, *Jelly Shift* copies core protected and distinctive elements that Voodoo created in *Shape Shifter 3D*, including its artwork, design aesthetics, layouts, level designs, and Voodoo's selection and coordination of game elements, color combinations, and shapes.  *Id.* ¶ 39.  Voodoo alleges that SayGames did not merely take the basic concepts of a color- and physics-based navigational game, or the elements dictated by genre, nature of the game, or rules.  *Id.* ¶ 40.  Rather, in cloning *Shape Shifter 3D*, SayGames wholly misappropriated the very creative combination of elements that Voodoo developed.  *Id.*  Voodoo carefully selected the colors, shapes, layouts, and design aesthetics to create a unique and engaging experience for users playing *Shape Shifter 3D*.  *Id.*

**B.     SayGames Copied Voodoo's Advertisement For *Shape Shifter 3D* And, Five Days Later, Used It To Advertise *Jelly Shift*.**

SayGames did not just clone Voodoo's game.  It also copied, and thereafter exploited, Voodoo's marketing materials that Voodoo created for its game, to promote its own copycat game, *Jelly Shift*.  Voodoo alleges that on June 10, 2019, it published an advertisement video of *Shape Shifter 3D* on Facebook.  *Id.* ¶ 29.  That advertisement displayed *Shape Shifter 3D's* gameplay, including the creative elements and artwork of the game, to introduce and promote Voodoo's newest game.  *Id.*  Five days later, on or about June 15, 2019, SayGames stole substantial portions of that video, also posted it on Facebook, and used it to promote *Jelly Shift*

instead.  *Id.* ¶ 30.  Voodoo's Complaint includes a side-by-side screenshot capture of the two videos depicting the specific examples of artwork and original creative elements of Voodoo's work that SayGames took.  *Id.*  Indeed, Voodoo alleges that SayGames' video reproduced *the exact same elements* of Voodoo's advertisement—even down to the frame.  *Id.*

**C.     SayGames Copied Voodoo's Icon For *Shape Shifter 3D* To Package *Jelly Shift* In A Confusingly Similar Icon.**

The Complaint further alleges that, in addition to copying Voodoo's game and Voodoo's marketing materials that advertised its game, SayGames also copied Voodoo's icon for *Shape Shifter 3D* which Voodoo uses to represent the game on a user's mobile device.  Compl. ¶¶ 33–36.  *SayGames* deliberately copied that icon for *Jelly Shift* to package *Jelly Shift* in a way that is confusingly similar to the way Voodoo used to identify its product.  *Id.* ¶ 36.  Voodoo's Complaint includes a side-by-side screenshot capture of the icons for each of the two games depicting the confusingly similar packaging that SayGames used for *Jelly Shift*.  *Id.* ¶¶ 32–33.  In particular, SayGames replicated the same prominent visual elements from Voodoo that depict the *Shape Shifter 3D* avatar, set atop a white path scrolling from the upper-left to the lower-right hand quadrants of the icon frame.  *Id.* ¶ 33.  SayGames' icon also replicates the same color combinations and creative elements, including the use of the *Shape Shifter 3D* avatar juxtaposed with the same black gated obstacles used in *Shape Shifter 3D's* gameplay.  *Id.*

SayGames could have used any of myriad creative visual decisions to package *Jelly Shift*. Instead, it chose the same *exact* creative elements that Voodoo used for *Shape Shifter 3D*.  *Id.* ¶ 34.  Voodoo alleges that SayGames did so to create confusion among users in the market for Voodoo's protected *Shape Shifter 3D* game by deliberately copying Voodoo's original creative elements in its *Shape Shifter 3D* icon.  *Id.* ¶ 36.

**D.     All These Actions Were Directed At The United States And California.[1]**

SayGames distributes *Jelly Shift* in the United States, and in California specifically,

---

[1] The facts pertaining to SayGames' contacts with the United States, and with this forum specifically, are set forth in Voodoo's Complaint, in the Declaration of Ira J. Levy, and in the

through the Apple App Store and the Google Play Store.  Compl. ¶ 27; Levy Decl. ¶¶ 2–7, Exhs. 1–6.  Both these platforms have step-by-step instructions developers must follow when uploading a game.  Levy Decl. ¶¶ 10, 17–21, Exhs. 12–14.  These instructions require the developer to select which territories in which it wishes to distribute.  *Id.*  As required under the terms of both the Apple App Store and the Google Play Store, to publish *Jelly Shift* in the United States, SayGames must affirmatively choose to make it available here.  *Id.*

Although SayGames is a Belarusian company, its website is in English and provides hyperlinks directing visitors to the *United States versions* of the Apple App Store and the Google Play Store to download the game.  *Id.* ¶ 5.  SayGames intersperses advertising directly into the gameplay of *Jelly Shift* itself.  *Id.* ¶¶ 22–26.  These advertisements are targeted specifically to users in the United States.  *Id.*  To illustrate, one of those ads is for an app called *Lucky Pusher*, where users are informed they can "easily earn real money with this free app," and depicting the money in United States currency.  *Id.* ¶ 24.  Another advertises for an app called *Kim Kardashian Hollywood* which is centered around American reality television personality Kim Kardashian.  *Id.* SayGames shows both these ads to users while playing *Jelly Shift*.  *Id.* ¶¶ 22–26.

That SayGames targets advertising towards United States and California users is unsurprising given its business model.  Chandou Decl. ¶¶ 5–6.  Like other mobile game developers, SayGames offers its products, including *Jelly Shift*, for free.  Compl. ¶ 58.  Anybody with a mobile device can download and play.  SayGames instead makes money by relying on in-app purchases and advertisement-based revenues.  *Id.*; Chandou Decl. ¶ 7.  The more users who download and play *Jelly Shift*, the more money SayGames makes through the game.  Compl. ¶ 58; Chandou Decl. ¶ 7.  *Jelly Shift* has been downloaded 15.5 million times in the United States alone, including in California.  Chandou Decl. ¶ 11; *see also* Levy Decl. ¶ 28, Exh. 18 (nearly 2 million downloads worldwide in March 2020 alone).  The United States takes the lion's share of these downloads, and is the most popular country for *Jelly Shift* on both Apple and Google.  Levy

_____

Declaration of Nicolas Chandou.  *See* Declaration of Ira J. Levy ("Levy Decl."); Declaration of Nicolas Chandou ("Chandou Decl.").

1   Decl. Exh. 28; Chandou Decl. ¶ 5.

2        To support its business in the United States, and in California specifically, SayGames

3   conducts extensive and ongoing business with persons and entities located in these forums.

4   Compl. ¶ 10(a).  SayGames enters into commercial agreements with California entities that

5   pertain to the use, distribution, publication, advertising, marketing, and/or sale of *Jelly Shift*.  *Id.*

6   ¶ 10(c); *see also* Levy Decl. ¶¶ 8–16, Exhs. 7–11.  One such agreement includes the Apple

7   Developer Agreement that SayGames enters into with Apple to list *Jelly Shift* on the Apple App

8   Store.  Levy Decl. ¶ 9.  The Apple Developer Agreement provides that the agreement is governed

9   by the laws of California and that the parties consent to jurisdiction in the Northern District of

10  California.  *Id.* ¶ 11.  Similarly the Google Play Store requires developers to agree to its Google

11  Play Developer Distribution Agreement.  *Id.* ¶ 12.  The agreement similarly states that "[a]ll

12  claims arising out of or relating to this Agreement . . . will be governed by the laws of the State of

13  California," and the developer and Google agree to submit to the "exclusive jurisdiction of the

14  federal or state courts located within the county of Santa Clara, California."  *Id.* ¶ 15.  Even

15  SayGames' own agreements and policies for *Jelly Shift* users specifically identify players located

16  in California, and no other state.  Its agreements rely on, and benefit from, the protection of

17  California law.  For instance, the *Jelly Shift* privacy policy specifically identifies the California

18  Consumer Privacy Act, and relies on it and the rights California residents have under California

19  law.  Levy Decl. ¶ 26, Exh. 16.  SayGames' commercial agreements identify no other United

20  States jurisdiction besides California.

21        **E.    SayGames Itself Concedes That Forum Is Proper Here.**

22        In pre-litigation correspondence between Voodoo's former French counsel and counsel

23  for SayGames, Voodoo explained that SayGames' actions were unlawful and cautioned that

24  Voodoo would bring suit against SayGames in French courts, for violations of French law.  Levy

25  Decl. ¶¶ 29–31, Exhs. 19–20.  SayGames rejected this assertion, stating that proper resolution of

26  this dispute was in the United States, subject to United States copyright law:

27        As an initial matter, we reject that this dispute is subject to French law.  Given that
          Voodoo has chosen to submit its infringement claims to Apple, Inc.'s U.S.-based
28        corporate headquarters, and seeks to de-list *Jelly Shift* from the Apple App Store in

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1

2

the United States, the merits of Voodoo's claims are properly subject to U.S. copyright law.

3

Levy Decl., Exh. 19.  In subsequent correspondence, SayGames again reiterated that forum was

4

proper in the United States, not France:

5

6

7

Voodoo chose to contact Apple *in the United States* seeking to de-list SayGames' app from the *U.S.-based* iTunes App Store on the grounds that its game had allegedly been infringed *in the United States*.  Voodoo picked this forum; it cannot avoid the effect of U.S. law by pretending the dispute somehow has no relationship to the United States.

8

Levy Decl., Exh. 20 (emphasis in original).  Voodoo therefore filed suit in this Court.

9

**III.**     **ARGUMENT**

10

11

**A.**     **The Complaint Sets Forth A *Prima Facie* Showing That SayGames Is Subject To The Jurisdiction Of This Court.**

12

**1.**     **This Court has specific personal jurisdiction over SayGames.**

13

In infringement cases, the Ninth Circuit applies a three-part purposeful direction test in

14

evaluating the presence of specific personal jurisdiction over a defendant:

15

16

17

(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; . . . (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

18

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (emphasis in

19

original).  Voodoo "bears the burden of satisfying the first two prongs." *Id.*  "If [it] does so, the

20

burden then shifts to [SayGames] to set forth a 'compelling case' that the exercise of jurisdiction

21

would not be reasonable." *Id.* (citation omitted).

22

At the pleading stage, "the plaintiff need only make a *prima facie* showing of

23

jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.

24

2004) (citations omitted); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) ("That is, the

25

plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.").

26

The Court must take "uncontroverted allegations in the complaint . . . as true" and "resolve

27

factual disputes in Plaintiff's favor."  *Mavrix*, 647 F.3d at 1223 (citations omitted).  "[A] court

28

may consider extrinsic evidence" on a Rule 12(b)(2) motion.  *Stewart v. Screen Gems-EMI*

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

-7-

1    *Music, Inc.*, 81 F. Supp. 3d 938, 951 (N.D. Cal. 2015).

2                        a.        <u>SayGames purposefully directs its activities here.</u>

3        *Mavrix* sets forth the following to evaluate purposeful direction:  "the defendant allegedly

4    must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

5    harm that the defendant knows is likely to be suffered in the forum state."  647 F.3d at 1228.

6    (citation and internal quotation marks omitted).

7        *First,* Voodoo pleads, and SayGames does not dispute, that SayGames markets and sells

8    *Jelly Shift* throughout the United States, including in California.  *See* Compl. ¶ 10; Mot. at 5–6.

9        *Second*, SayGames expressly aims those activities at California.  In evaluating the

10   "express aiming" prong, the Ninth Circuit cautions that, a defendant's passive online activity

11   alone is insufficient.  *Mavrix*, 647 F.3d at 1229; *see also Holland Am. Line Inc. v. Wärtsilä N.*

12   *Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("We consistently have held that a mere web

13   presence is insufficient to establish personal jurisdiction.").  But, "we have held that 'operating

14   even a passive website in conjunction with 'something more'—conduct directly targeting the

15   forum—is sufficient.'" *Mavrix*, 647 F.3d at 1229 (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284

16   F.3d 1007, 1020 (9th Cir. 2002).  "[T]hat 'something more' means conduct expressly aimed at the

17   forum," *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), and

18   "consider[s] several factors, including the interactivity of the defendant's website . . . [or] the

19   geographic scope of the defendant's commercial ambitions," among others.  *Mavrix*, 647 F.3d at

20   1229 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1153–58 (9th Cir. 2006)).

21       Here, Voodoo alleges that SayGames does "something more"—indeed, very much

22   more—to expressly aim its activities at California and target the residents thereof.  SayGames

23   characterizes Voodoo's Complaint as merely "hing[ing] on the argument that SayGames sells its

24   products through app stores operated by Google and Apple, and those companies happen to be

25   headquartered in California."[2]  Mot. at 6.  But SayGames ignores Voodoo's other allegations of

26

27   ──────────────────────

[2] As discussed during the Court's April 16 hearing, SayGames has levied an identical

28   jurisdictional argument in a sister case, *Good Job Games Bilism Yazilim ve Pazarlama A.S. d/b/a*

"express aiming" at California, as well as other evidence available without discovery:

(i)  SayGames affirmatively targets California to sell *Jelly Shift*.  Levy Decl. ¶¶ 17–26, Exhs. 12–17.  Although SayGames is Belarusian game developer, it provides its website in English and links visitors to the *United States versions* of the Apple App Store.  *Id.* at 5.  To publish *Jelly Shift* on Apple and Google required SayGames to select the geographic markets it wished the game to be distributed.  *Id.* at 17–21.  SayGames did so here for the United States, and has in fact made those products available to users in California.  *Id.*

(ii)  SayGames enters into agreements with California entities that pertain to the use, distribution, publication, advertising, marketing, and/or sale of *Jelly Shift*.  *Id.* ¶¶ 8–16; Compl. ¶ 10.  SayGames conducts business that relies on, and benefits from, California law.  Levy Decl. ¶¶ 8–16, 26–27.  These include forum selection clauses in which SayGames assents to jurisdiction here in California.  Levy Decl. ¶¶ 11, 15.  SayGames' own agreements rely on the benefits and protections of California law.  *Id.* at 27.  In fact, in SayGames' Terms of Use and Privacy Policies for *Jelly Shift*, the **_only_** United States jurisdiction identified is California.

(iii)  The advertisements incorporated into *Jelly Shift* are advertisements intended for an audience in the United States, including in California.  *Id.* at 24–25.

(iv)  "The geographic scope of [SayGames'] commercial ambitions" is vast, *Mavrix*, 647 F.3d at 1229, and specifically targets the United States, including California.  *Jelly Shift* has been downloaded 15.5 million times in the United States.  Chandou Decl. ¶ 11; Levy Decl. ¶¶ 29.  The lion's share of those downloads occurred in the United States, including in California.

(v)  SayGames profits handsomely from Californians by seeking downloads of *Jelly Shift* in California, and soliciting revenue through in-game purchases and ads.  Compl. ¶ 48.  In March 2020 alone, *Jelly Shift* was downloaded nearly two million times globally.  Levy Decl. ¶ 28.

(vi)  Finally, SayGames itself admits that jurisdiction is proper here, and concedes that "the merits of Voodoo's claims are properly subject to U.S. copyright law."  *Id.* ¶ 30, Levy Decl. Exh. 19.  It explains that "Voodoo cannot avoid the effect of U.S. law by pretending the dispute

---

*Good Job Games v. SayGames LLC*, Case No. 3:19-cv-07916-EMC (N.D. Cal. Dec. 3, 2019).

1    somehow has no relationship to the United States." *Id.* Exh. 20.

2           Altogether, this is *not* a case where SayGames merely placed a product on an online store

3    whose "companies happen to be headquartered in California." Mot. at 6.  To the contrary,

4    SayGames also does very much more here to purposefully direct its commercial activities at

5    California, and to profit off of Californians.

6           SayGames' Motion alludes to *Wuzla*, but its reliance there is misplaced.  Mot. at 7 (citing

7    *Goes Int'l AB v. Wuzla*, No. CV 13-7102 PA (Ex), 2014 WL 12617386 (C.D. Cal. Apr. 7, 2014)).

8    *First*, the *Wuzla* court decided the motion on the defendant's request for venue transfer, not on

9    personal jurisdiction. *Id.* at *5.  *Second*, more importantly, the *Wuzla* plaintiff's allegations

10   consisted of little more than the defendant's distribution of its product through Apple and Google.

11   *Id.* at *1.  Other than alluding to "an unknown number of sales," the plaintiff offered no further

12   allegations in support of jurisdiction.  *Id.*  Unsurprisingly, these threadbare allegations were

13   insufficient to establish jurisdiction over the defendant.  *Id.* at *2.  Likewise, *Zherebko v.*

14   *Reutskyy* suffers from a similar deficiency.  No. C 13-00843 JSW, 2013 WL 4407485 (N.D. Cal.

15   Aug. 12, 2013); *see* Mot. at 6.  The *Zherebko* plaintiff, like the *Wuzla* plaintiff, offered no ties to

16   California other than an allegation that disputes in connection with the game were subject to the

17   jurisdiction and venue of courts in Santa Clara County.  *Id.* at *1.  The *Zherebko* court then

18   resolved the jurisdictional issue on the infringement claim on the plaintiff's place of residency.

19   *Id.* at *3.  On that basis alone, the court concluded that because "Zherebko is not a resident of

20   California and does not allege any ownership interest in any business in California," there could

21   be no express aiming under the purposeful direction inquiry.  *Id.* at *3.  This analysis did not

22   discuss any of the factors of "something more" as cautioned by the Ninth Circuit in *Mavrix*.  *Id.*

23          Indeed the only case to ever discuss *Zherebko* declined to follow it.  In a case bearing

24   facts nearly identical to those here, *Goes International, AB v. Dodur Ltd.* involved a Swedish

25   hyper casual game maker (Goes) who brought suit against a Chinese hyper casual game maker

26   (Dodur) for copyright infringement.  No. 14-cv-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug.

27   26, 2015).  Goes sued Dodur here in the Northern District of California, alleging that Dodur's

28   game published on Google and Apple infringed Goes' copyrights.  *Id.* at *2.  Dodur moved to

dismiss for lack of jurisdiction, arguing that merely transmitting its product through Apple and Google was insufficient. *Id.* at *6. The *Goes* Court rejected that argument. It went on to explain that Goes had set forth ample evidence to show that Dodur had not simply passively made available a product on Apple and Google, but that in fact, Goes had shown Dodur "expressly aimed" its conduct here at California, and "purposefully directed" those activities to this forum. *Id.* at *9–*11. Just as Voodoo does here, Goes alleged that: (i) when Dodur uploaded its infringing game onto Apple and Google, it affirmatively selected the geographic markets where it wished to sell its game; (ii) even though Dodur was a Chinese company, it also provided an English-translated website aimed at users in the United States including in California; (iii) Dodur marketed heavily to users in the United States, and that its infringing game "has been downloaded over 2.5 million times in the United States"; (iv) a significant share of Dodur's profits came from in-game purchases or advertisement-based revenues, and that those revenues were substantially earned off of users in the United States and California; and (v) Dodur's conduct expressly aimed at California injured Goes. *See id.* at *1 (citation omitted). The *Goes* court went on to conclude:

> The court thinks that Dodur is doing more than putting its product in the stream of commerce with no acts aimed at the forum. The world-wide distribution here included U.S. customers and happened not by an intervening decision of a distributor such as the Chinese tire maker in *Asahi* but instead by Dodur itself. The allegedly infringing game is a copy of a Goes game popular with U.S. players, who receive ads targeted to them. Goes receives revenue mainly due to U.S. players. It is significant that an infringing game is being distributed in a marketplace that includes U.S. players, even if the means for distribution is selecting the default of "worldwide" distribution. Dodur suggests (but does not say overtly) that selection is passive, but according to Goes, one has to "select" default or country-specific distribution (and thus necessarily include the U.S. by selecting the default). The court resolves any conflicts in the declarations in Goes's favor, *see Schwarzenegger*, 374 F.3d at 800, and concludes (on this record) that the distribution of the games for commercial gain in the U.S. forum constitutes purposeful direction.

*Id.* at *10. As in *Goes*, so too here SayGames has "done more than put[] its product in the stream of commerce with no acts aimed at the forum." *Id.* To the contrary, SayGames' conduct demonstrates a pattern of deliberate steps to target Californians, market to Californians, and ultimately profit off Californians. SayGames thus purposefully directs its activities at California.

Finally, *third*, SayGames' conduct harms Voodoo in California. SayGames' ongoing

Goodwin Procter LLP
Attorneys at Law

-11-

willful infringement and unfair competition threatens Voodoo's business and revenue in California by, *inter alia*, diverting consumers from Voodoo's mobile games to SayGames' copycat versions.  Compl. ¶ 83; *see also Mavrix*, 647 F.3d at 1231–32 (copyright holder harmed not only in principal place of business but also where infringement and economic loss occurred).

### b.      Voodoo's claims arise out of SayGames' conduct here.

SayGames' unlawful conduct caused injury to Voodoo that SayGames knew was likely to occur in this forum.  But-for SayGames' ongoing and willful infringement and unfair competition, Voodoo would not have suffered nor continue to suffer harm.  *See Mavrix*, 647 F.3d at 1228 (conduct was expressly aimed at the forum where plaintiff's copyright infringement claim arose out of "[defendant's] publication of photos on a website accessible to users in the forum state"); *Goes Int'l*, 2015 WL 5043296 at *13 (concluding "that the distribution of [an] application via the [Apple App Store and Google Play Store] satisfies this test").  Put another way, in the absence of SayGames' unlawful conduct, Voodoo would not have suffered injury in California.

### c.      SayGames offers no "compelling case" for why the exercise of jurisdiction would be unreasonable here.

> To determine whether jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court considers seven factors:  (1) the extent of the defendant's purposeful interjection into the forum's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Id.* at *13.  Here the totality of the factors weigh in favor of jurisdiction, and SayGames has not met its burden showing otherwise.  *First* as discussed above, SayGames' level of purposeful interjection here is vast.  *Shuffle Master, Inc. v. Avalinx, Inc.*, No. CV 12-7473 DSF (MRWx), 2012 WL 12888850, at *5 (C.D. Cal. Nov. 13, 2012) ("[P]urposeful injection is analogous to the purposeful direction analysis[.]") (citation and internal quotations omitted).  *Second*, SayGames' "burden" flows directly from its activities directed at this forum.  *See, e.g.*, *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) ("[T]his factor is not dispositive.  [M]odern advances in communications and transportation have significantly reduced the burden of litigating in

another country." (internal quotation marks and citation omitted)).  *Third*, *fourth*, and *fifth*, SayGames itself concedes that this dispute, resting on United States copyright law, is appropriately resolved in the United States.  Levy Decl. Exh. 19 ("[T]he merits of Voodoo's claims are properly subject to U.S. copyright law."); *Id.* Exh. 20 ("[Voodoo] cannot avoid the effect of U.S. law by pretending the dispute somehow has no relationship to the United States."). This case involves the adjudication of federal and state law claims.  California has significant interest in adjudicating California-based claims where its residents and consumers were targeted and misled.  And *sixth* and *seventh*, there is no more appropriate forum to litigate federal and California-based intellectual property and competition claims than in California.

**2.     SayGames has nation-wide contacts to the United States.**

Because SayGames further argues that jurisdiction is lacking not just in *this* Court, but indeed in *any* U.S. court, Voodoo additionally brings this suit pursuant to Federal Rule of Civil Procedure 4(k)(2).  At the pleading stage, a *prima facie* showing of Rule 4(k)(2) jurisdiction requires that:  "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction.  Third, the federal court's exercise of personal jurisdiction must comport with due process.  *Pebble Beach*, 453 F.3d at 1159.  The Complaint does so here.

*First*, Voodoo has asserted federal copyright, trade dress, and false advertising claims.

*Second*, SayGames has not identified any other United States jurisdiction where it would be subject to personal jurisdiction, and indeed argues that this dispute ought "proceed in the alternative forum of Belarus."  Mot. at 9; *see Holland Am. Line*, 485 F.3d at 462 ("[A]bsent any statement from [defendant] that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.").

*Third*, this Court's exercise of jurisdiction over SayGames comports with due process. "The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis" except that "rather than considering contacts between the . . . [defendant] and the forum state, [the court] consider[s] contacts with the nation as a whole."  *Goes Int'l*, 2015 WL 5043296 at *7 (citation omitted).  As set forth above, *supra* § III(A)(1)(c), SayGames copied

1    Voodoo's work, and has affirmatively exploited the U.S. market for profit.  On Voodoo's well-

2    pled allegations, specific personal jurisdiction is also found here under Rule 4(k)(2).  *Id.* at *14

3    (allegations sufficient under Rule 4(k)(2) to show "*prima facie* showing of specific personal

4    jurisdiction over Dodur based on Dodur's contacts with the United States").[3]

5            **B.    The Complaint Sufficiently Alleges That SayGames Infringed Voodoo's**

6                    **Copyrights In *Shape Shifter 3D* And In Its Video Ad For *Shape Shifter 3D*.**

7            At the pleading stage, the plaintiff must allege sufficient facts as to "(i) ownership of the

8    allegedly infringing work, and (ii) copying of the protected elements of the work by the

9    defendant."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017).  Where

10   there is no direct evidence of copying, a plaintiff may satisfy the "copying" prong through

11   circumstantial evidence that (i) the defendant had access to the copyrighted work prior to the

12   creation of defendant's work, and (ii) there is substantial similarity of the general ideas and

13   expression between the copyrighted work and the defendant's work.  *Id.* (citation omitted).

14           On a motion to dismiss, a court must "accept[] the plaintiff's allegations as true and

15   draw[] all reasonable inferences in favor of the plaintiff."  *Free Speech Sys., LLC v. Menzel*, 390

16   F. Supp. 3d 1162, 1168 (N.D. Cal. 2019).  "A facially plausible claim allows the court to draw the

17   reasonable inference that the defendant is liable for the misconduct alleged."  *Clifton v. Pearson*

18   *Educ., Inc.*, No. 11-CV-03640-EJD, 2012 WL 1565236, at *2 (N.D. Cal. May 2, 2012).  "[A]

19   valid copyright infringement claim must allege only the basic elements of infringement" to

20   survive a motion to dismiss.  *Basevi, Inc. v. Acorn Co.*, No. CV 08-cv-07145-AHM (JTLx), 2009

21   WL 764532, at *4 (C.D. Cal. Mar. 19, 2009); *accord Jobscience, Inc v. CVPartners, Inc.*, No. C

22   13-04519 WHA, 2014 WL 93976, at *2 (N.D. Cal. Jan. 9, 2014).

23

24   _____

     [3] In the alternative, should the Court find discovery warranted here to clarify the jurisdictional

25   facts, Voodoo rests on the legal arguments set forth in its Motion for Leave.  Dkt. No. 29.

26   However, Voodoo takes under advisement the Court's guidance regarding the scope of Voodoo's

27   specific discovery requests at the April 16 hearing, and Voodoo can submit tailored discovery

28   consistent with the Court's Order if and should the Court find necessary.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

-14-

1        **1.      Voodoo's Complaint alleges that SayGames copied *Shape Shifter 3D*.**

2        *First*, Voodoo pleads ownership of a valid copyright to *Shape Shifter 3D*.  Compl. Exh. 1;

3    *Unicolors*, 853 F.3d at 988 ("A certificate of registration from the U.S. Copyright Office raises

4    the presumption of copyright validity and ownership.").

5        *Second*, Voodoo alleges SayGames had access to *Shape Shifter 3D*.  "To prove access, the

6    party asserting infringement . . . must demonstrate that there is a 'reasonable possibility' or

7    'reasonable opportunity' for the defendant to view the asserted works."  *Alpi Int'l, Ltd v. Anga*

8    *Supply, LLC*, 118 F. Supp. 3d 1172, 1179–80 (N.D. Cal. 2015) (citation omitted).  "A 'reasonable

9    possibility' of access can be proven through circumstantial evidence 'in one of two ways:  (1) a

10   particular chain of events is established between the plaintiff's work and the defendant's access to

11   that work . . . , or (2) the plaintiff's work has been widely disseminated.'"  *Id.* (citation omitted).

12   "In most cases, the evidence of widespread dissemination centers on the degree of a work's

13   commercial success and on its distribution through radio, television, and other relevant mediums.

14   . . . [or] on saturation in a relevant market in which both the plaintiff and the defendant

15   participate."  *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citations omitted).  Voodoo

16   has adequately pled access here.  Voodoo alleges that SayGames released *Jelly Shift* two weeks

17   after *Shape Shifter 3D*.  Voodoo disseminates *Shape Shifter 3D* globally through the Apple App

18   Store and the Google Play Store.  Compl. ¶ 27.  As a result, *Shape Shifter 3D* has had marked

19   commercial success since launch.  *Id.* ¶ 2. The market for hyper casual games is the "relevant

20   market in which both [Voodoo] and [SayGames] participate."  *Loomis*, 836 F.3d at 997.

21   Accordingly, the Complaint sufficiently alleges there was a "reasonable possibility" or

22   "reasonable opportunity" for SayGames to view *Shape Shifter 3D*.

23       *Third*, the Complaint plausibly alleges facts that *Jelly Shift* is substantially similar to

24   *Shape Shifter 3D*.  "In assessing whether particular works are substantially similar, or strikingly

25   similar, this Circuit applies a two-part analysis:  the extrinsic test and the intrinsic test."

26   *Unicolors*, 853 F.3d at 985.[4]

27   _____

28   [4] SayGames also suggests that the "virtual identity standard" applies.  Mot. at 12 n.3.  This is

However as a preliminary matter, courts in this district have cautioned that *neither* test is well-suited for resolution at the pleading stage.  This is because the factual question of "substantial similarity" ordinarily requires a fuller evidentiary record for resolution by a factfinder.  *See, e.g.*, *Smith v. AMC Networks, Inc.*, No. 18-CV-03803-LHK, 2019 WL 402360, at *5 (N.D. Cal. Jan. 31, 2019) (citing *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006)) (explaining on a Rule 12(b)(6) motion, that "'[t]he intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, *is exclusively the province of the jury*.'  Thus, the intrinsic test is not relevant here."  (emphasis added)); *Cabell v. Zorro Prods. Inc.*, No. 15-CV-00771-EJD, 2017 WL 2335597, at *8 (N.D. Cal. May 30, 2017) ("This case lacks the kind of comprehensive factual record and undisputed facts that would allow the court to apply the 'extrinsic test' at this stage, and there is no support for Defendants' argument that doing so is required for the purposes of a motion to dismiss."); *see also Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) ("The extrinsic test requires 'analytical dissection of a work and expert testimony.'" (citation omitted)).

Nevertheless, SayGames urges this Court to apply the extrinsic test at this pleading stage. Mot. at 11–12.  Even if it were applied, SayGames' argument, still, is unavailing.  At bottom, SayGames' argument rests on a piecemeal, elemental dissection of Voodoo's *Shape Shifter 3D*. The Motion examines *Shape Shifter 3D* element-by-element, bit-by-bit, arguing that each piece standing alone is unprotectable and that, therefore, *Shape Shifter 3D* as a whole is unprotectable as well.  This argument is fundamentally flawed and finds no support in federal copyright law. Voodoo claims the protection of federal copyright law not in each separate *element* of *Shape*

─────────────────────

incorrect.  The application of the virtual identity standard to infringement claims is limited, and applies only where the sole expressions at issue are largely unprotectable ideas.  *See Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016).  Here, they are not.  Ordinarily, for protected works such as a video game, courts apply the "substantial similarity test" because the range of expressive elements encapsulated within such a work is wide.  *See, e.g.*, *Spry Fox LLC v. LOLApps Inc.*, No. 12-cv-00147-RAJ, 2012 WL 5290158, at *14 (W.D. Wash. Sept. 18, 2012).

*Shifter 3D*, but in *Shape Shifter 3D itself*.  The law is well-settled; copying one's original *combination*, *organization*, or *presentation* of elements, even if those elements standing alone may not be protected, can and does give rise to infringement liability.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 362 (1991) (original selection, coordination, and arrangement of unprotectible elements may be protectible expression); *accord Skidmore v. Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020).  "For this reason," the Ninth Circuit has approved the Second Circuit's reasoning in *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)* **<u>rejecting</u>** the defendant's argument that "'in comparing [ ] designs for copyright infringement,' a court must 'dissect them into their separate components, and compare only those elements which are in themselves copyrightable.'"  *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012) (citing *Knitwaves*, 71 F.3d 996, 1003 (2d Cir. 1995)).  The *Knitwaves* court explained, "if we took this argument to its logical conclusion, we might have to decide that 'there can be no originality in a painting because all colors of paint have been used somewhere in the past.'"  71 F.3d at 1003.

  *Shape Shifter 3D* is protected by copyright because, not only does Voodoo own a valid copyright to *Shape Shifter 3D*, but also the **<u>whole</u>** of the game—"its artwork, design aesthetics, layouts, level designs, and its selection and coordination of game elements, color combinations, and shapes," constitutes original, creative expression under federal copyright law.  Compl. ¶¶ 39–40.  Viewed under this (correct) lens, then, Voodoo's Complaint sets forth sufficient allegations that *Jelly Shift* is, indeed, substantially similar to *Shape Shifter* 3D:




-17-

As pled in the Complaint, SayGames copied expressive elements and combinations of Voodoo's constituent elements, not just the ideas and game mechanics as SayGames argues. Compl. ¶¶ 38–40.  Voodoo alleges that SayGames copied "the very creative *combination*" of elements Voodoo developed, including "selected colors, shapes, layouts, and design aesthetics." Compl. ¶ 40 (emphasis added); *see also id.* ¶ 39 ("*Shape Shifter 3D* is filled with original expression that Voodoo created, including its artwork, design aesthetics, layouts, level designs, and its selection and coordination of game elements, color combinations, and shapes."). Furthermore, the Complaint includes screenshots showing the striking similarity of game elements, especially when viewed in the aggregate and in the context of the entire game from the perspective of a user playing *Shape Shifter 3D*.  Both games include complex patterns with nearly identical orientation, spacing, and coloration of game features including the avatar, pathway, and background.  The colors and open spaces are used in identical ways to highlight and contrast. SayGames could have created in any myriad of ways "a navigational game where the goal is to bypass obstacles while traveling along a path," but it chose this specific, and substantially similar way.  In all, SayGames selectively focuses on the game elements in isolation.  So doing, it ignores the whole of the expressive work that includes the combination, organization, and presentation of those elements that together create *Shape Shifter 3D*.

The Motion levies several arguments that mischaracterize Voodoo's allegations.  *First*, SayGames abstracts Voodoo's entire collection of expressive choices to argue Voodoo attempts to copyright "the idea of a navigational game."  Mot. at 13.  But Voodoo's Complaint explicitly alleges that "SayGames did not take merely the basic concepts of a . . . navigational game . . . . Rather, SayGames wholly misappropriated the very creative combination of . . . carefully selected colors, shapes, layouts, and design aesthetics to create a unique and engaging experience in *Shape Shifter 3D*."  Compl. ¶ 40.  *Second*, for the same reason, SayGames' argument that Voodoo's "idea of a navigational game where the goal is to bypass obstacles while traveling along a path is not original."  Mot. at 15.  This is again a strawman argument.  Voodoo alleges infringement of the original expression in *Shape Shifter 3D*, not the concept of a navigational game.  Compl. ¶¶ 64–66.  *Third*, SayGames claims that Voodoo's expressions that are "indispensable and

naturally associated with the treatment of a given idea are treated like ideas and are therefore not protected by copyright."  Mot. at 13.  But however, SayGames does not identify what , in *Shape Shifter 3D* specifically, constitute scènes à faire.  For instance, Voodoo's protected expression in its avatar is not related to its use or existence in the game, but rather to its artwork, design and color selection, and coordination with the level design and layout.  Compl. ¶ 40.  *Fourth*, SayGames argues that "[g]ame mechanics, play, and rules are not entitled to copyright protection."  Mot. at 14.  But the Motion identifies no instances in the Complaint alleging copyright over the mechanics, play, or rules of *Shape Shifter 3D*.  That is because there are none.  Again, Voodoo claims infringement over the protectable expressions in *Shape Shifter 3D*, detailed *supra*, not over its gameplay.  Compl. ¶¶ 64–66.  The rest of SayGames' argument that relate to "elements common in many video game apps" merges into its scènes à faire argument and fails for the reasons given above.  Mot. at 14.  Finally *fifth*, SayGames' argument as to what is "dissimilar" between the games misses the mark.  Mot. at 16–18.  This Court must focus on what is *similar* between the apps, not what is different.

## 2.   SayGames copied Voodoo's video ad that marketed *Shape Shifter 3D*.

Finally, SayGames' infringement argument omits any discussion as to its use of Voodoo's video advertisement that marketed *Shape Shifter 3D*.  Compl. ¶¶ 28–31.  That video depicted gameplay for *Shape Shifter 3D*, but it was taken and replicated by SayGames to advertise its own game, *Jelly Shift*.  The infringement was blatant.  As alleged, SayGames had access to Voodoo's work because it was posted on Facebook, and just five days later, was also posted by SayGames on Facebook as well.  *Id.* ¶¶ 29, 30.  SayGames "reproduced *the exact same elements* of Voodoo's protected work—even down to the frame."  *Id.* ¶ 30.  The Complaint depicts a side-by-side comparison of the two showing identical footage taken by SayGames from Voodoo's videogame.  *Id.*  Artistic elements that are undoubtedly protected by copyright—*e.g.*, the "Rad Dad!" animation, the design and layout of the billboard, the exact replicas of the light posts— were used by SayGames to advertise and promote its own infringing game, *Jelly Shift*.  *Id.* ¶¶ 30, 31.  The Complaint sets forth well-pled facts of infringement in Voodoo's copyright.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

**C.      SayGames' Preemption Argument Is Inapposite.**

SayGames argues that the remainder of Voodoo's claims are preempted by the Copyright Act to the extent they rely on the same infringement allegations.  Mot. at 18–19.  This argument is inapposite.  None of the remaining claims assert "rights equivalent to any of the exclusive rights" granted under the Copyright Act.  Count Two alleges infringement of Voodoo's icon for *Shape Shifter 3D* because Voodoo "packaged" *Jelly Shift* in a confusingly similar icon.  Counts Three and Four allege Voodoo falsely advertises *Shape Shifter 3D* as its own.  And Count Five alleges unfair competition from SayGames' Lanham Act violation.  None of these claims are preempted.

**D.      Voodoo Plausibly Alleges That SayGames Packaged *Jelly Shift* In A Confusingly Similar Icon.**

To state a claim for trade dress infringement, a plaintiff must allege:  (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion.  15 U.S.C. § 1125(a)(3); *see also TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001).

*First*, SayGames does not dispute that Voodoo's icon for *Shape Shifter 3D* is non-functional.  *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881–82 (9th Cir. 2018) ("[A] product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." (citation omitted)).

*Second*, the Complaint alleges that the *Shape Shifter 3D* icon is inherently distinctive and identifies the game as one associated with Voodoo.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (trade dress is inherently distinctive when its "intrinsic nature serves to identify a particular source of a product").  The Motion claims that Voodoo "does not identify the distinctive elements."  Mot. at 19.  To the contrary, the Complaint alleges the *Shape Shifter 3D* icon as depicting the following distinctive elements:  the "game's avatar: the three-dimensional quadrangular block in an orange color scheme—set atop a white path scrolling from the upper-left to lower-right hand quadrants of the icon"; the "blue color elements that contrast the background with the foreground frame"; and the  "orange avatar adjacent a bold black gate, one

of the several obstacles central to the gameplay in *Shape Shifter 3D*."  Compl. ¶ 33; *see also*

*Trendsettah USA Inc. v. J A Tobacco Corp.*, No. CV-13-04194 BRO (PJWx), 2013 WL

12131742, at *6 (C.D. Cal. Sept. 11, 2013) (observing plaintiff's allegations detailing "several

distinctive elements that comprise the claimed trade dress," and denying motion to dismiss).  As

alleged in the Complaint, these distinctive elements identify the source of *Shape Shifter 3D*.

 *Third*, Voodoo sets forth sufficient allegations that SayGames used a confusingly similar

icon to package *Jelly Shift*.  At the outset—as with copyright infringement claims—the Ninth

Circuit has cautioned that trade dress infringement claims are ordinarily ill-suited for resolution at

the pleading stage.  *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir.

2001) (in a trade dress infringement dispute, cautioning that likelihood of confusion is a question

of fact, and that "[i]ndeed . . . 'trial courts disfavor deciding trademark cases in summary

judgments because the issue is so inherently factual.'"  (citation omitted)).  "[T]he question of

likelihood of confusion is routinely submitted for jury determination as a question of fact."  *Levi*

*Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).

 Nevertheless, SayGames urges this Court to resolve the issue at this pleadings stage.

Even under the test, SayGames' argument cannot defeat Voodoo's well-pled allegations that its

deliberately similar icon creates a likelihood of confusion.  "Likelihood of confusion exists when

customers viewing the mark would probably assume that the product or service it represents is

associated with the source of a different product or service identified by a similar mark."  *Clicks*

*Billiards*, 251 F.3d at 1265 (citation omitted).  "The factual elements that make up likelihood of

confusion include evidence of actual confusion, the defendant's intent in adopting the mark,

similarity of marks, similarity of goods and marketing channels, and the strength of the mark."

*Id.*  (citation omitted).  Here, Voodoo alleges sufficient facts that the *Jelly Shift* icon is likely to

confuse.  The icon "copie[s] the same prominent visual elements from Voodoo," including the

same avatar, the same color scheme, the same white path as a focal element scrolling from the

upper-left to lower-right quadrants, and the same bold black gates.  Compl. ¶ 33.  "SayGames

could have made any of myriad creative visual decisions to 'package' *Jelly Shift*.  But instead, it

chose the same exact creative elements that Voodoo used to package *Shape Shifter 3D*."  *Id.* ¶ 34.

Indeed, Voodoo also alleged actual confusion in the market, as some players wrongly believed that *Shape Shifter 3D* was a "knock-off" of *Jelly Shift* when in fact it was the other way around. *Id.* ¶ 42.  Because SayGames deliberately packaged *Jelly Shift* in a confusingly similar icon, it created actual confusion as to which game came first, and which game took the idea from whom. *Id.* ¶¶33–36.

Because Voodoo alleges that the *Shape Shifter 3D* icon is non-functional, because it identifies the source of *Shape Shifter 3D* as belonging to Voodoo, and because SayGames' similar packaging for *Jelly Shift* sows confusion among the consuming public, the Complaint sets forth sufficient allegations to state a claim for trade dress infringement at this pleading stage.

**E.     The Complaint Also Plausibly Alleges That SayGames Falsely Advertised *Shape Shifter 3D* as Its Own.**

SayGames' Motion to Dismiss Count 3 fails because Voodoo's Complaint sets forth the elements of Voodoo's false advertising claim with particularity.  To bring a false advertising claim under § 43(a) of the Lanham Act, at the pleading stage a plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  Lanham Act claims sounding in fraud are subject to Rule 9(b) heightened pleading requirements.  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  At the pleading stage, the plaintiff need only set forth allegations, not evidence, that support "[a]verments of fraud [] accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  Voodoo's Complaint does so here.

*First*, SayGames argues that Voodoo's Complaint "fail[s] to identify the false statement at issue," Mot. at 21, but this is incorrect.  Under § 43(a), falsity can be established in either of two ways:  "[A] plaintiff may show that the statement was literally false, either on its face or by

necessary implication, or that the statement was literally true but likely to mislead or confuse consumers.'" *Southland*, 108 F.3d at 1139–40   A statement is literally false "if it unambiguously conveys a message and that message conflicts with reality." *Reed Constr. Data Inc. v. McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385, 412 (S.D.N.Y. 2014).  Here, SayGames' advertisement depicting a product as its own, when in fact it was not, is literally false.

A recent case from this district illustrates this principle.  In *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, the plaintiff was an e-commerce retailer who sold products on the Amazon.com website.  411 F. Supp. 3d 905, 924 (N.D. Cal. 2019).  It brought suit against a rival e-commerce competitor claiming that the competitor had made false statements in connection with the sale of its products.  *Id.* at 911–13.  Specifically, the defendant had caused Amazon to merge product listings advertising plaintiff's products into the defendant's own online store.  *Id.* at 910–11.  "As a result of Defendant's actions, the [product] Listing for Plaintiff's product 'falsely advertis[ed] . . . a product manufactured and branded by Defendant' when the product in fact was manufactured and branded by Plaintiff."  *Id.* at 924.  In essence, "Plaintiff alleges that Defendant's listing advertised Plaintiff's [ ] product as Defendant's own." *Id.*  "That statement is literally false as pled in the FAC."  *Id.*

Here, as in *Factory Direct*, Voodoo alleges that SayGames advertised a product that it did not create and does not own, but nevertheless has used that advertising to promote the product depicted as its own.  Compl. ¶¶ 28–32.  The Complaint details that on June 10, 2019, Voodoo published a marketing video that depicted the gameplay in its game, *Shape Shifter 3D* on Facebook.  *Id.* ¶ 29.  Days later, on or about June 15, Voodoo further alleges that SayGames "stole substantial portions of Voodoo's promotional video for *Shape Shifter 3D*, also posted it on Facebook, and used it to promote *Jelly Shift*."  *Id.* ¶ 30.  To illustrate, the Complaint depicts side-by-side comparisons of Voodoo's marketing video for *Shape Shifter 3D*, and SayGames' marketing video for *Jelly Shift*.  *Id.*  The frames are identical.  *Id.* ¶¶ 30–31 (describing the similarities in both videos).  For its own game, SayGames used a video depicting *Shape Shifter 3D* to represent *Jelly Shift*.  *Id.*  SayGames "unambiguously conveys a message" that the gameplay depicted therein is its own product when in fact it was not, and therefore "that message

1  conflicts with reality." *Reed Constr. Data*, 49 F. Supp. 3d at 412.  This statement is literally false.

2  *Second* and *third*, "[w]hen a statement is literally false, the second and third elements of

3  actual deception and material[ity] are presumed." *Factory Direct*, 411 F. Supp. 3d at 924 (citing

4  *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052

5  (S.D. Cal. 2019)); *accord AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056

6  (C.D. Cal. 2018).  SayGames' statement was literally false.  At this pleading stage, the second

7  and third elements of actual deception and materiality are presumed.

8  *Fourth*, SayGames put the false statement into interstate commerce because it placed the

9  video advertisement on Facebook on or about June 15, 2019.  Compl. ¶ 30; *see also AECOM*

10  *Energy*, 348 F. Supp. 3d at 1056 ("As to the fourth element, it is undisputed that Defendants

11  caused their false statements to enter interstate commerce, as they collectively used their online

12  website and email addresses connected to the same domain name.").

13  *Fifth*, Voodoo has alleged that it has suffered injury and continues to suffer injury because

14  of SayGames' conduct.  Compl. ¶¶ 56–58; 83.

15  In total, the Complaint sets forth "the who, what, when, where, and how" of its false

16  advertising claim.  The "who" and "what" consist of SayGames, who has falsely advertised

17  Voodoo's promotional video for *Shape Shifter 3D*, to promote for its own game, *Jelly Shift*.  The

18  "when" is beginning on or about June 15, 2019.  Compl. ¶ 30.  The "where" and "how" consist of

19  posting this video on a global platform, in order to promote its own copycat game, *Jelly Shift*.

20  Voodoo therefore sufficiently alleges its Lanham Act claim.

21      **F.**    **SayGames' False Advertisement Is Equally Actionable Under The FAL.**

22  The California FAL prohibits "any person" with the intent to perform services or to

23  induce the public to enter into any obligation, "to make or disseminate" any statement concerning

24  those services "which is untrue or misleading, and which is known, or which by the exercise of

25  reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500;

26  *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 988 (N.D. Cal. 2010).  Claims arising under

27  FAL "are substantially congruent to claims made under the Lanham Act."  *L.A. Taxi Coop., Inc.*

28  *v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 860 (N.D. Cal. 2015) (citation omitted).  Here, as in

1  Voodoo's Lanham Act false advertising claim, Voodoo sets forth sufficient facts alleging

2  SayGames' violation of the California FAL.  SayGames intended to sell *Jelly Shift*, and made and

3  disseminated a false statement regarding that product online.  Compl. ¶ 31.  In addition,

4  SayGames knew or should have known this statement was untrue because it did not create that

5  promotional advertisement, and it also did not create, own, or offer for sale, the game depicted in

6  the accused video.  *Id.*  Voodoo therefore sufficiently alleges its California FAL claim.

7       **G.**     **Voodoo Sufficiently Pleads Unfair Competition.**

8       Claims arising under the California UCL requires a plaintiff to demonstrate that the

9  practice is (1) unlawful (*i.e.*, is forbidden by law), (2) unfair (*i.e.*, harm to victim outweighs any

10 benefit) or (3) fraudulent (*i.e.*, is likely to deceive members of the public).  *Moss v. Infinity Ins.*

11 *Co*., 197 F. Supp. 3d 1191, 1198 (N.D. Cal. 2016).  A plaintiff may allege any one of these three

12 prongs, as each operates independently from the others.  *See State Farm Fire & Cas. Co. v.*

13 *Super. Ct.*, 45 Cal. App. 4th 1093, 1102 (1996).  As with the California FAL, "[t]he Ninth Circuit

14 'has consistently held that state common law claims of unfair competition and actions pursuant to

15 California Business and Professions Code § 17200 are 'substantially congruent' to claims made

16 under the Lanham Act.'" *Iglesia Ni Cristo v. Cayabyab*, No. 18-CV-00561-BLF, 2020 WL

17 1531349, at *8 (N.D. Cal. Mar. 31, 2020) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63

18 (9th Cir. 1994)).  Voodoo's UCL claim overlaps substantively with its Lanham Act claim.  *First*,

19 Voodoo alleges that SayGames' conduct is unlawful because SayGames falsely advertised, as its

20 own, a product that belonged to Voodoo.  *Second*, SayGames' conduct is also unfair, because it

21 did so to seek an unlawful competitive advantage against a rival in the market for hyper casual

22 games.  And *third*, SayGames' conduct is fraudulent because it made deliberately false and

23 misleading statements to deceive the consuming public to sell its product.  The Complaint sets

24 forth sufficient allegations that SayGames' conduct is unlawful under the California UCL.

25 **IV.**    **CONCLUSION**

26      For the foregoing reasons, Plaintiff Voodoo SAS respectfully requests an Order from this

27 Court DENYING Defendant SayGames LLC's Motion to Dismiss.

28 //

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1   //

2                                                Respectfully submitted,

3

4   Dated: May 4, 2020                    By:   _/s/ Ira J. Levy_____

5                                                **GOODWIN PROCTER** LLP

6                                                IRA LEVY (*pro hac vice*)
                                                 *ILevy@goodwinlaw.com*
7                                                NEEL CHATTERJEE (SBN 173985)
                                                 *NChatterjee@goodwinlaw.com*
8                                                JAMES LIN (SBN 310440)
                                                 *JLin@goodwinlaw.com*
9                                                JAMES BREEN (*pro hac vice*)
                                                 *JamesBreen@goodwinlaw.com*
10                                               DANIEL R. MELLO JR. (SBN 325714)
                                                 *DMello@goodwinlaw.com*
11
                                                 *Attorneys for Plaintiff*
12                                               *Voodoo SAS*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOODWIN PROCTER LLP
ATTORNEYS AT LAW