IRA LEVY (*pro hac vice*)
ILevy@goodwinlaw.com
JAMES P. BREEN (*pro hac vice*)
JamesBreen@goodwinlaw.com
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: +1 212 813 8800
Fax: +1 212 355 3333

NEEL CHATTERJEE (SBN 173985)
NChatterjee@goodwinlaw.com
DANIEL R. MELLO JR. (SBN 325714)
DMello@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

JAMES LIN (SBN 310440)
JLin@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

*Attorneys for Plaintiff*
*Voodoo SAS*

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VOODOO SAS,<br><br>    Plaintiff,<br><br>v.<br><br>SAYGAMES LLC,<br><br>    Defendant. | Case No.  5:19-cv-7480-BLF-SVK<br><br>**DECLARATION OF IRA J. LEVY IN SUPPORT OF PLAINTIFF VOODOO SAS' OPPOSITION TO DEFENDANT SAYGAMES LLC'S MOTION TO DISMISS**<br><br>Date:  May 28, 2020<br>Time:  9:00 a.m.<br>Floor:  Courtroom 3 – 5th Floor<br>Judge:  The Hon. Beth Labson Freeman<br><br>Filed concurrently herewith:<br>1. Memorandum of Points and Authorities<br>2. Declaration of Nicolas Chandou<br>3. [Proposed] Order<br>4. Certificate of Service<br><br>Trial date:  N/A |

I, Ira J. Levy, hereby declare as follows:

1. I am a partner at the law firm Goodwin Procter LLP, attorneys of record for Plaintiff Voodoo SAS ("Voodoo"). I have personal knowledge of the matters set forth in this declaration in support of Plaintiff's Opposition to Motion of Defendant SayGames LLC ("SayGames") to Dismiss Complaint for Lack of Personal Jurisdiction (the "Motion," Dkt. No. 22) and, if called to testify as a witness, could and would competently testify to the information set forth herein.

**SayGames' Distribution Through Apple And Google**

2. SayGames distributes mobile games in the United States through the Apple App Store and Google Play Store. Both Apple, Inc. ("Apple") and Google LLC ("Google") are headquartered in California, in the United States.

3. **Exhibit 1** to this declaration is a true and correct copy of a page on the Apple App Store website showing a sample of the applications that SayGames distributes for download through the App Store in the United States, captured April 23, 2020 and available at https://apps.apple.com/ us/developer/saygames-llc/id1405039362#see-all/i-phonei-pad-apps. I understand this webpage to be specific to the United States because of the "/us/" identifier in the URL seen at the bottom of the page. It is my understanding that this refers to games SayGames makes available and distributes in the "United States". **Exhibit 2** to this declaration is a true and correct copy of pages from www.sensortower.com specific to SayGames reporting the number of games that are available on the iOS and Android platforms, captured May 4, 2020 and available at https://sensortower.com/ios/publisher/saygames-llc/1405039362. According to this report, SayGames has 32 iOS apps and 31 downloads available through the Google Play store.

4. **Exhibit 3** to this declaration is a true and correct copy of a page on the Google Play Store website showing applications that SayGames distributes for download through the Google Play Store in the United States, captured April 23, 2020 and available at https://play.google.com/store/apps/developer?id=SayGames&hl=en_US. According to this page, SayGames currently distributes 30 separate game applications through the Google Play Store. I understand this webpage to be specific to the United States because of the "/en_US/" identifier in the URL. It

1  is my understanding that this refers that "en" refers "English" and "US" refers to the "United
2  States." See also **Exhibit 2** for a more recent report on SayGames Google Play games.
3         5.      **Exhibit 4** is a true and correct copy of the landing page of SayGames' website,
4  http://saygames.by.  SayGames' website is in English and includes links to the Apple App Store
5  and Google Play store:

 

9  Both the Apple App Store and Google Play Store buttons direct consumers to what appears to be
10 the United States version of both stores.
11        6.      **Exhibit 5** is a true and correct copy of the page for *Jelly Shift* on the App Store in
12 the United States, captured April 23, 2020 and available at https://apps.apple.com/us/app/jelly-
13 shift/id1467252438.  In the top right hand corner of the second page of Exhibit 5 are the
14 hyperlinked words, "Version History."  Upon clicking the words, "Version History," a window
15 pops up within the webpage showing the history of versions of *Jelly Shift* on the App Store.  It is
16 my understanding based on the information in the Version History window on the App Store for
17 *Jelly Shift*, SayGames has uploaded seventeen separate versions of *Jelly Shift* to the App Store at
18 various times.  Further, upon information and belief, each time SayGames uploaded a version to
19 the Apple App Store it was available for download in the United States.
20        7.      **Exhibit 6** is a true and correct copy of the page for *Jelly Shift* on the Google Play
21 Store in the United States, captured April 23, 2020 and available at https://play.google.com/
22 store/apps/details?id=com.shape.change&hl=en.  Information regarding the version histories on
23 the Google Play Store were not available.  My understanding is that each version was made
24 available for download in the United States.
25              **SayGames' Agreements with Apple to Distribute *Jelly Shift***
26        8.      I am aware that, in order to distribute an application through the Apple App Store
27 or Google Play Store, an application developer must enter into an agreement with each platform.
28

9. **Exhibit 7** is a true and correct copy of the "Apple Developer Agreement," available at https://developer.apple.com/terms/apple-developer-agreement/. It is my understanding that in order to make an Apple Developer account to distribute an application through the Apple App Store, a developer must agree to the Apple Developer Agreement. Section 3 of the Apple Developer Agreement requires developers "not to exploit the Site, or any Services, Apple Events or Content provided to you by Apple as an Apple Developer, in any unauthorized way . . . ."

10. **Exhibit 8** is a true and correct copy of the Developer Support page on Apple's website, available at https://developer.apple.com/support/. This page provides "details and step-by-step instructions on how to use Apple development tools and resources."

11. Section 17 of the Apple Developer Agreement (**Exhibit 7**) includes a choice of law provision that provides:

> This Agreement will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law provisions. The parties further submit to and waive any objections to personal jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, Santa Clara County Municipal Court, or any other forum in Santa Clara County, for any disputes arising out of this Agreement.

### SayGames' Agreements With Google To Distribute *Jelly Shift*

12. Similarly, the Google Play Store requires that developers enter an agreement with Google before distributing apps through the platform. **Exhibit 9** is a true and correct copy of the Google Play Developer Distribution Agreement, available at https://play.google.com/about/developer-distribution-agreement.html. Like with Apple, developers wishing to distribute apps through the Google Play Store must first agree to the Google Play Developer Distribution Agreement. Section 2 of the Google Play Developer Distribution Agreement states, titled "Accepting this Agreement" states "you are contracting with the applicable Google entity based on where You have selected to distribute Your Product (as set forth here)[,]" where the word "here" is hyperlinked.

13. **Exhibit 10** is a true and correct copy of the webpage that the hyperlinked "here" directs to, a page called "Supported locations for developer & merchant registration," available at

1  https://support.google.com/googleplay/android-developer/answer/9306917?hl=en&visit_id.

2  According to this page, developers distributing their products in the United States contract with

3  Google LLC.

4      14.    Section 4.6 of the Google Play Developer Agreement requires that developers

5  agree to "use Google Play "only for purposes that are permitted by this Agreement and any

6  applicable law, regulation, or generally accepted practices or guidelines in the relevant

7  jurisdictions[.]"

8      15.    Section 16.8 of the Google Play Store Developer Distribution Agreement also

9  includes a choice of law provision invoking California law and forums for any dispute:

> All claims arising out of or relating to this Agreement or Your relationship with Google under this Agreement will be governed by the laws of the State of California, excluding California's conflict of laws provisions.  You and Google further agree to submit to the exclusive jurisdiction of the federal or state courts located within the county of Santa Clara, California to resolve any legal matter arising from or relating to this Agreement or Your relationship with Google under this Agreement, except that You agree that Google will be allowed to apply for injunctive relief in any jurisdiction.  If You are accepting the Agreement on behalf of a United States government entity, then the following applies instead of the foregoing: the parties agree to remain silent regarding governing law and venue.

16      16.    The Google Play Store Developer Distribution Agreement also requires that

17  developers adhere to Google's Developer Program Policies, which include provisions specifically

18  for intellectual property rights.  **Exhibit 11** is a true and correct copy of one of those Developer

19  Program Policies, "Impersonation and Intellectual Property," available at https://play.google.com/

20  about/ip-impersonation/.  That policy prohibits "apps or developer accounts that infringe on the

21  intellectual property rights of others."

    **SayGames Affirmatively Selects the United States to Distribute *Jelly Shift*.**

23      17.    SayGames affirmatively chose to make *Jelly Shift* available for distribution

24  through the Apple App Store and Google Play Store in the United States.  Both platforms require

25  developers to select the territories in which they want their app to be available in.  Since *Jelly*

26  *Shift* is available for download in the United States and California on both the Apple App Store

27  and Google Play Store, it is my understanding that SayGames, during the upload of the game,

28  chose to make it available in the Unites States.

18.     Apple provides a step-by-step guide for developers to use in selecting territories in which to distribute their apps. **Exhibit 12** is a true and correct copy of a page titled "Select territories for your app," located in the App Store Connect Help center, available at https://help.apple.com/app-store-connect/#/devcdda55918.  At the top of the page, Apple states, "You can select the territories where you want your app to be available on the App Store.  By default, all territories are selected, but you can deselect territories where you don't want your app for sale."  The word "territories" in that sentence is a hyperlink that directs the developer to a page listing all possible App Store territories, including "US" for United States.  **Exhibit 13** is a true and correct copy of the App Store territories page, available at https://help.apple.com/app-store-connect/#/dev997f9cf7c.

19.     The "Select territories for your app" help page (**Exhibit 12**) then lays out specific steps for selecting or editing distribution territories:



Similarly, Google has a process for the selection of territories in which a developer wishes to distribute an application.  **Exhibit 14** is a true and correct copy of a page titled "Distribute app releases to specific countries" within the Play Console Help center, available at https://support.google.com/googleplay/android-developer/answer/7550024?hl=en.  At the top of the page, Google states, "When you roll out an app to the Production, Alpha, or Beta track, you can target your release in each track to users in specific countries."

20. On this help page, Google provides detailed step-by-step instructions for managing "app availability," which "refers to your app's availability in the production track" and includes a specific step to "Manage countries" for a particular app:

> **App availability**
>
> App availability refers to your app's availability in the production track. When you select a country as available, any future production releases include that country.
>
> To manage your app's availability:
>
> 1. Go to your Play Console.
> 2. Select an app.
> 3. Select **Store presence > Pricing & distribution.**
> 4. In the "Countries" section, select **Manage countries.**
> 5. Update your app's country selection.
>    - If you add a country for a paid app, new prices are automatically added. If needed, you can then edit local prices.
> 6. Submit your app update.
>
> **Note:** For details on how to target a staged rollout to specific countries, go to release app updates with staged rollouts.

21. I understand that mobile game companies generate revenue from their games through in-game advertising. "In-game" advertisements are shown to players of a game interspersed with gameplay. It is my understanding that the developer receives revenue based on the advertisements shown in the game, in part due to how many times each advertisement has been viewed by a consumer.

22. The in-game advertisements that players of *Jelly Shift* in the United States view when playing *Jelly Shift* appear to be targeted to a United States consumer market. **Exhibit 15** is a collection of true and correct screenshots from advertisements that were viewed within the *Jelly Shift* gameplay environment.

23. One advertisement in Exhibit 15 and viewed in *Jelly Shift* is for a game called Lucky Pusher:



In that advertisement the game is marketed as a way to "easily earn real money with this free app." As the advertisement progresses, a screen appears as shown below:

In this portion of the advertisements a transfer of "$30.00USD" is shown via PayPal from Lucky

1  Pusher.  Further, later in the advertisement United States currency is shown:

[image of stacks of United States currency]

15  It is my understanding that this advertisement implies that consumers can received United States
16  currency from playing the game.
17        24.    Furthermore, another advertisement in Exhibit 14 and viewed in *Jelly Shift* is for a
18  game called "Kim Kardashian Hollywood."
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //





25.	In that advertisement a cartoon representation of popular American personality Kim Kardashian is seen.  Further, the games references to Los Angeles, California neighborhood, Hollywood.

**SayGames' Commercial Agreements**

26.	SayGames' privacy policy for *Jelly Shift* confirms its relationship with California customers.  **Exhibit 16** is a true and correct copy of the "Jelly Shift – Privacy Policy" captured on April 27, 2020 and available at https://saygames.by/privacy-policy/jellyshift.  The privacy policy includes a specific section titled "Rights of California Residents," which addresses requirements of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 et seq.  I am aware that the CCPA applies only to certain entities that do business in the state of California.  This section of the privacy policy incorporates extensive language specific to residents of California.  It describes the rights that are available to residents of California.  It provides information on the right to "opt out." It describes the right to be informed, the right to disclosure, and the right to deletion. It provides a listing of other rights, as well as the manner in which those rights to be exercised.  Out of a five page policy more than one entire page is directed at California residents.  No location in the United States other than California is specifically mentioned in the policy.

27.	On information and belief the privacy policy and terms of use for *Jelly Shift* at the time it was launched further confirms the relationship with and specific targeting of residents of California.  **Exhibit 17** is a true and correct copy of the "Jelly Shift Terms of Use," "Last updated 1 September 2018," captured on May 1, 2020 and available at https://saygames.by/privacy-policy-and-terms-of-use/jellyshift.  Under this policy, at section "6.4 Release," the policy states, in all capital letters:

> IF YOU ARE A CALIFORNIA RESIDENT, YOU HEREBY WAIVE CALIFORNIA CIVIL CODE SECTION 1542 IN CONNECTION WITH THE FOREGOING, WHICH STATES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Other than California, no other state or United States geographic location is referenced in this policy.

**Downloads of *Jelly Shift***

28.  SayGames' distribution and advertising of *Jelly Shift* in the United States appears to have paid off, based on limited available public information about estimated performance of *Jelly Shift* in the United States.  For example, **Exhibit 18** is a true and correct copy of a page for *Jelly Shift* on the website Sensor Tower, last accessed on April 28 through Apple's App Store website available at https://sensortower.com/ios/us/saygames-llc/app/jelly-shift/1467252438/overview and through Google Play Store website, available at https://sensortower.com/android/US/saygames/app/jelly-shift/com.shape.change/overview.  The data at that URL is dynamic and changes each day to capture the current month's figures, but Exhibit 18 shows install estimates for *Jelly Shift* in the United States for the month of March 2020 as 900,000 times worldwide on the Apple App Store and 1 million times worldwide on the Google Play Store.  Furthermore, the Sensor Tower report for shows the United States as the most popular country for *Jelly Shift*.

**Pre-Litigation Correspondence Leading Up To The Present Suit**

29.  **Exhibits 19–20** are true and correct copies of correspondence between Voodoo and SayGames regarding Voodoo's DMCA takedown notice of *Jelly* Shift.  In this correspondence (**Exhibit 19**), SayGames explicitly states that this dispute it subject to U.S. Copyright law, and therefore, should be subject to adjudication in the United States.  Specifically, SayGames states:

> As an initial matter, we reject that this dispute is subject to French law. Given that Voodoo has chosen to submit its infringement claims to Apple, Inc.'s U.S.-based corporate headquarters, and seeks to de-list *Jelly Shift* from the Apple App Store in the United States, *the merits of Voodoo's claims are properly subject to U.S. copyright law*.
>
> \* \* \*
>
> For the reasons discussed below, SayGames has not infringed any protected, copyrightable elements of Voodoo's app *under U.S. law*.

(emphasis added).

30. Moreover, SayGames reiterated its position that this dispute should be adjudicated in the United States in subsequent correspondence (**Exhibit 20**):

> Voodoo chose to contact Apple in the United States seeking to de-list SayGames' app from the U.S.-based iTunes App Store on the grounds that its game had allegedly been infringed in the United States. *Voodoo picked this forum; it cannot avoid the effect of U.S. law by pretending the dispute somehow has no relationship to the United States.*

(emphasis added).

31. Furthermore, throughout its letter SayGames cites to U.S. legal authority, and in particular cases within the Ninth Circuit and California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 4th day of May, 2020, in Bedford, New York.

                                                                                  /s/ Ira J. Levy
                                                                                   IRA J. LEVY

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on May 4, 2020. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on May 4, 2020.

                                                                 */s/ Ira J. Levy*
                                                                 IRA J. LEVY