1  Craig B. Whitney (SBN 217673)
   cwhitney@fkks.com
2  FRANKFURT KURNIT KLEIN + SELZ PC
   28 Liberty Street, 35th Floor
3  New York, NY 10005
   Telephone:    (212) 826-5583
4  Facsimile:    (212) 593-9175

5  Attorneys for Defendant SayGames, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| VOODOO SAS, | Case No. 5:19-cv-07480-BLF |
| Plaintiff, | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY DEFENDANT SAYGAMES LLC TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM** |
| vs. | |
| SAYGAMES LLC, | |
| Defendant. | [*Filed concurrently with Reply Declaration of Craig B. Whitney*] |
| | Date:     May 28, 2020<br>Time:     9:00 a.m.<br>Crtrm.:   3<br>Judge:    Hon. Beth Labson Freeman |
| | Trial Date:              TBD |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................... 1

II. VOODOO FAILS TO CARRY ITS BURDEN OF SHOWING THAT
    SAYGAMES IS SUBJECT TO PERSONAL JURISDICTION ....................................... 2

   A.  SayGames Does Not Purposely Direct Its Activities Toward California ............... 2

   B.  Voodoo's Claims Do Not Arise Out of Conduct in the State ............................... 7

   C.  Exercise of Specific Personal Jurisdiction is Not Reasonable .............................. 7

   D.  Voodoo's Rule 4(k)(2) Argument Fails ................................................................. 7

III. VOODOO'S JURISDICTIONAL DISCOVERY REQUEST SHOULD BE
     DENIED ........................................................................................................................ 9

IV. VOODOO FAILS TO STATE A CLAIM AGAINST SAYGAMES ............................... 9

   A.  Voodoo Fails to State a Plausible Claim for Copyright Infringement ................... 9

       1.  Voodoo Does Not Plausibly Plead Substantial Similarity in the
           Games .......................................................................................................... 10

       2.  Voodoo Does Not Properly Allege Infringement of the Video
           Advertisement ............................................................................................. 12

   B.  Voodoo Fails to State a Plausible Claim for Trade Dress Infringement .............. 13

   C.  Voodoo Fails to State a Plausible Claim for False Advertising ........................... 13

   D.  Voodoo's State Law Claims Also Fail ................................................................ 15

V.  CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) .................................................................................................. 11

*Ariix, LLC v. NutriSearch Corp.*,
  No. CV17-320-LAB-BGS, 2018 WL 1456928 (S.D. Cal. Mar. 23, 2018) .............................. 14

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty*,
  480 U.S. 102 (1987) .................................................................................................................. 7

*Bibiyan v. Marjan Television Network, Ltd.*,
  No. CV18-1866-DMG, 2019 WL 422664 (C.D. Cal. Feb. 4, 2019) ........................................ 5

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .................................................................................................. 9

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*,
  137 S. Ct. 1773 (2017) .............................................................................................................. 7

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
  398 F. Supp. 3d 623 (N.D. Cal. 2019) .................................................................................... 15

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .................................................................................................................. 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) .................................................................................................................. 14

*DFSB Kollective Co. v. Bourne*,
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ...................................................................................... 4

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
  638 F. Supp. 2d 1 (D.D.C. 2009) .............................................................................................. 3

*Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*,
  411 F. Supp. 3d 905 (N.D. Cal. 2019) .................................................................................... 14

*Fourth Estate Public Benefit Corp. v. Wall-Street.com*,
  586 U.S. __, 139 S.Ct. 881 (2019) ..................................................................................... 4, 13

*Goes Int'l, AB v. Dodur Ltd.*,
  No. CV3:14-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015) .................................. 6

*Goes Int'l AB v. Wuzla*,
  No. CV13-7102-PA, 2014 WL 12617386 (C.D. Cal. Apr. 7, 2014) ........................................ 6

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 1060 N
Los Angeles, California 90067
P (310) 579.9600

*Good Job Games Bilism Yazilim VE Pazarlama A.S. v. SayGames LLC*,
    No. 19-cv-07916-EMC (N.D. Cal. May 7, 2020) ............................................................... *passim*

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ..................................................................................................7, 8

*LivePerson, Inc. v. [24]7.ai Inc.*,
    No. CV-17-01268, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) .............................................15

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ..................................................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003) ....................................................................................4

*Rosen v. Terapeak, Inc.*,
    No. CV-15-00112-MWF, 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) ................................3

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................................................3, 5

*Seals-McClellan v. Dreamworks, Inc.*,
    120 Fed. App'x 3 (9th Cir. 2004) .............................................................................................9

*Siddiqui v. Schneider*,
    No. CV19-0706, 2019 WL 8129081 (C.D. Cal. Sept. 10, 2019) ..............................................5

*Silas v. Home Box Office, Inc.*,
    201 F. Supp. 3d 1158 (C.D. Cal. 2016) ..................................................................................12

*Spry Fox, LLC v. LOLApps, Inc.*,
    No. 2:12-cv-00147-RAJ, 2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ..........................12

*Stiles v. Wal-Mart Stores, Inc.*,
    No. CV2:14-2234-GEB-CMK, 2015 WL 5173060 (E.D. Cal. Sept. 2, 2015) ........................13

*Thompson v. Carnival Corp.*,
    174 F. Supp. 3d 1327 (S.D. Fla. 2016) .....................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..................................................................................................................4

*Weiss v. DreamWorks SKG*,
    No. CV14-02890-DDP, 2015 WL 12711658 (C.D. Cal. Feb. 9, 2015) ..................................10

*Zherebko v. Reutskyy*,
    No. CV13-00843-JSW, 2013 WL 4407485 (N.D. Cal. Aug. 12, 2013) ....................................6

**Statutes**

Copyright Act, 17 U.S.C. § 101 *et seq* ................................................................................. 2, 14, 15

Lanham Act, 15 U.S.C. § 1051 *et seq* ................................................................................. 12, 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 4(k)(2) ................................................................................ *passim*

Federal Rule of Civil Procedure 9(b) .......................................................................................... 14

## I. INTRODUCTION

The identical personal jurisdiction question at issue in this case was decided last week in a companion case. As the Court may recall, during oral argument on Voodoo's motion for jurisdictional discovery, Voodoo raised—and all parties discussed—the companion copyright infringement case in the Northern District of California against SayGames pending before Judge Chen. Voodoo also identified that case, *Good Job Games Bilism Yazilim VE Pazarlama A.S. v. SayGames LLC,* No. 19-cv-07916-EMC (N.D. Cal.), in its opposition brief (ECF No. 43 ("Opposition" or "Opp'n")) as "a sister case" to this one with "an identical jurisdictional argument." (Opp'n at 8 n.2.) On May 7, 2020, Judge Chen granted SayGames's motion to dismiss for lack of personal jurisdiction. *See* Reply Declaration of Craig B. Whitney, dated May 14, 2020 ("Whitney Decl."), Ex. A ("*Good Job Games*").

Both parties acknowledge that the jurisdictional facts and arguments made in *Good Job Games* are virtually identical to this case. The only additional point raised here is Voodoo's mischaracterization of two pre-litigation attorney letters where SayGames's counsel correctly stated that U.S. law applied to Voodoo's takedown notice to Apple in the U.S., which Voodoo now seeks to spin into a jurisdictional waiver. There is no mention of personal jurisdiction in those letters, however, much less an acknowledgement or waiver, and they are irrelevant to the jurisdictional analysis.

As SayGames demonstrated in its motion to dismiss (ECF No. 22 ("Motion" or "Mot.")) and as the *Good Job Games* court recently concluded, SayGames is not subject to personal jurisdiction in California merely because it distributes its *Jelly Shift* video game app worldwide though the app stores of California-based Apple and Google. Voodoo claims in its Opposition that it is alleging "something more" than SayGames's relationship with Apple and Google as the basis for California jurisdiction, but fails to identify any meaningful instance of SayGames expressly aiming its alleged conduct at California. Nor has Voodoo alleged sufficient relevant contacts with the United States generally for due process to allow for nationwide jurisdiction over SayGames under Federal Rule of Civil Procedure 4(k)(2), as *Good Job Games* also held. Voodoo's claims should accordingly be dismissed for lack of personal jurisdiction.

REPLY BRIEF IN FURTHER SUPPORT OF MOTION OF SAYGAMES LLC TO DISMISS COMPLAINT

Voodoo's claims also fail on the merits.  In its Motion, SayGames demonstrated that, once stripped of its unprotectable elements, no substantial similarity exists as a matter of law between *Shape Shifter 3D* and *Jelly Shift* to support Voodoo's copyright infringement claim.  Voodoo fails to rebut this conclusion in its Opposition and instead attempts to reframe the substantial similarity analysis to include all elements—protectable or not—in combination, contradicting its own Complaint.  Voodoo cannot avoid dismissal of its copyright infringement claim, however, by alleging that similarity exists only when the games are viewed as a whole by the user without permitting this Court to analyze the actual works.  Ultimately, the Complaint fails to identify substantially similar protectable expression, separately or in combination, in the parties' respective works, requiring dismissal.  Voodoo's remaining claims, which allege trade dress infringement, false advertising, and unfair competition, each likewise fail to allege critical elements of the claim or are preempted by the Copyright Act—or both.  Accordingly, Voodoo's Complaint should be dismissed in its entirety with prejudice.

## II.     VOODOO FAILS TO CARRY ITS BURDEN OF SHOWING THAT SAYGAMES IS SUBJECT TO PERSONAL JURISDICTION

Voodoo does not argue in its Opposition that SayGames is subject to general jurisdiction in California.  Instead, Voodoo argues that SayGames expressly targets California (primarily as a result of contacts with the United States generally) with its allegedly unlawful activity sufficient to confer specific personal jurisdiction here.  Yet, Judge Chen recently rejected a nearly identical argument in a case that Voodoo concedes "shares many parallels with this case."  (Whitney Decl., Ex. B (Transcript of April 16, 2020 Oral Argument) ("Tr.") at 7:18.)  Judge Chen also squarely rejected Voodoo's alternative argument for nationwide jurisdiction under Fed. R. Civ. P. 4(k)(2).  As set forth below, the same result is warranted here.

### A.     SayGames Does Not Purposely Direct Its Activities Toward California

Notwithstanding the allegations in its Complaint, Voodoo appears to recognize in its Opposition that distribution of *Jelly Shift* through Google and Apple is insufficient to confer specific jurisdiction over SayGames in California, but nevertheless argues that jurisdiction exists because SayGames has done "'something more' . . . to expressly aim its activities at California

and target the residents thereof." (Opp'n at 8.) In reality, there is nothing more that links SayGames to California.

Voodoo's Opposition (*id*. at 9) lists the purported additional activities targeting California, none of which is sufficient to confer jurisdiction or is "expressly aimed" at California at all. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806-07 (9th Cir. 2004). *First*, Voodoo argues that SayGames "affirmatively targets California to sell *Jelly Shift*" solely because it offers the game in English and has a United States version. (Opp'n at 9.) Needless to say, offering a game in the English language to the entire United States in no way targets the State of California. *See, e.g.*, *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009) (maintenance of English-language website did not "denote[] any targeting of D.C. residents" as English is "widely-used across the globe"). Further, Voodoo offers no support that there is an alleged "United States version" of the game or how that version differs from any other English-language version if it even existed.

*Second*, Voodoo claims that SayGames has entered "into agreements with California entities" that contain California choice of law and forum selection clauses. (Opp'n at 9.) These agreements are, of course, the development agreements with Google and Apple that allow for distribution through their respective app stores, and thus are nothing "more" than the same insufficient allegation that SayGames distributes *Jelly Shift* through these entities. (ECF No. 43 ("Levy Decl.") ¶¶ 8-16 (identifying Apple and Google agreements).) *See Rosen v. Terapeak, Inc.*, No. CV-15-00112-MWF, 2015 WL 12724071, at *10 (C.D. Cal. Apr. 28, 2015) ("The Court is unpersuaded that [defendant's license agreement with eBay, by which it subjected itself to California law,] is a jurisdictionally relevant contact that is sufficiently related to either the forum or the claims to justify exercising personal jurisdiction."). Nor are these agreements even at issue in this litigation. The only other "agreement" referenced is SayGames's privacy policy and terms of use, which does not have a California choice of law provision, but merely complies with California privacy law (as well as European Union privacy law, for that matter). Voodoo cites no authority that such language has any jurisdictional relevance.

*Third,* not only does Voodoo's claim of SayGames's alleged U.S.-targeted advertising (Opp'n at 9) lack any connection specifically to California (once again), it is not a relevant jurisdictional contact in any event because Voodoo is not suing SayGames over any in-game *Jelly Shift* advertising. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1086 (C.D. Cal. 2003) ("there is no evidence that [geo-targeted] advertising gave rise to Plaintiff's claims, i.e., that the advertising itself is a relevant contact for purposes of jurisdiction over the copyright claims"); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (only "suit-related conduct" is relevant to determining substantial connection with the forum State).

*Fourth*, the allegation that *Jelly Shift* has been downloaded by users in the U.S. through Google's and Apple's app stores and that SayGames has obtained revenue from these downloads (Opp'n at 9) is an extension of the argument that *Jelly Shift* is generally available via California-based app stores throughout the U.S. and the world. Again, nothing about this allegation in any way demonstrates that SayGames expressly aimed its conduct *at California*—or even the United States. Despite Voodoo alleging—twice—that the "United States takes the lion's share of these downloads" (Opp'n at 5, 9), the evidence submitted by Voodoo confirms that 80% of *Jelly Shift* downloads are from *outside of the U.S.* (ECF No. 43-22 (Declaration of Nicolas Chandou) ¶ 11.)

These allegations are indistinguishable from *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871 (N.D. Cal. 2012), where the court found no personal jurisdiction in California despite a large market for defendant's downloads in the state. *See id.* at 874. Judge Chen likewise considered and rejected all of these arguments. *See Good Job Games* at 3-11.

Voodoo's only jurisdictional allegation not already considered by Judge Chen is a misleading reference to SayGames's counsel's pre-litigation correspondence with Voodoo's French counsel. Voodoo—notably omitting the correspondence from its own counsel—mischaracterizes SayGames's counsel's statements as admitting that "jurisdiction is proper here." (Opp'n at 9; *see also* Opp'n at 1, 6-7.) SayGames did no such thing. A plain reading of the correspondence reveals that Voodoo had sent a takedown notice to Apple in the U.S. and argued that Apple should apply French copyright law to remove *Jelly Shift* from the App Store (presumably because Voodoo has no viable claim under U.S. copyright law, as discussed below).

1  SayGames informed Voodoo's French counsel that U.S. law applies to Voodoo's takedown notice
2  to Apple in the U.S.—which Voodoo disputed, although Voodoo omits that point as well.
3  Nowhere in the correspondence does SayGames even mention jurisdiction, much less consent to it
4  in California or the United States. To the contrary, SayGames expressly did not waive and
5  reserved all rights. (ECF Nos. 43-20 at 5, 43-21 at 4.) Voodoo's argument that "SayGames itself
6  admits that jurisdiction is proper here" based solely on these attorney letters lacks any credibility.
7  And the fact that it is Voodoo's leading argument in its Opposition (Opp'n at 1) and reiterated
8  throughout speaks volumes about Voodoo's basis for personal jurisdiction.

9        Indeed, Voodoo points to almost nothing supporting the argument that SayGames
10 purposefully directed its conduct *at California* specifically. *See Schwarzenegger*, 374 F.3d at 802
11 ("Under the first prong of our three-part specific jurisdiction test, [plaintiff] must establish that
12 [defendant] either purposely availed itself of the privilege of conducting activities *in California* or
13 purposely directed its activities *toward California*.") (emphasis added). As noted above, all that
14 Voodoo has demonstrated specific to California (rather than the United States generally) is that
15 SayGames chose to distribute its games through the Apple and Google app stores and those
16 international corporations have California headquarters. Due process and Ninth Circuit law do not
17 allow for the exercise of personal jurisdiction in California under these circumstances. *See*
18 *Siddiqui v. Schneider*, No. CV19-0706, 2019 WL 8129081, at *3 (C.D. Cal. Sept. 10, 2019) (due
19 process not satisfied where conduct did not specifically target California).

20       As Judge Chen noted in addressing this very issue, Apple and Google "arguably have a
21 virtual monopoly on the channels in which developers can distribute application-based software."
22 *Good Job Games* at 5. Any app developer that wants to distribute its app on an iPhone, for
23 example, *must* distribute through Apple. SayGames would have made this choice if Apple and
24 Google were headquartered anywhere else in the world. *See Bibiyan v. Marjan Television*
25 *Network, Ltd.*, No. CV18-1866-DMG, 2019 WL 422664, at *4 (C.D. Cal. Feb. 4, 2019) (that
26 defendant's app is available on Google and Apple's store has "no bearing on whether Defendant
27 intended to exploit the Persian music video viewership market in California").
28

1    Failing to overcome these legal hurdles, Voodoo attempts to distinguish applicable case
2 law, including *Zherebko v. Reutskyy*, No. CV13-00843-JSW, 2013 WL 4407485 (N.D. Cal. Aug.
3 12, 2013) and *Goes Int'l AB v. Wuzla*, No. CV13-7102-PA, 2014 WL 12617386 (C.D. Cal. Apr. 7,
4 2014), as outliers or lacking sufficient jurisdictional allegations.  Instead, Voodoo, like the
5 plaintiff in *Good Job Games*, relies primarily on and quotes heavily from *Goes Int'l, AB v. Dodur*
6 *Ltd.*, No. CV3:14-05666-LB, 2015 WL 5043296 (N.D. Cal. Aug. 26, 2015).  (*See* Opp'n at 10-
7 11.)  In *Dodur*, however, Magistrate Judge Beeler exercised jurisdiction solely under Fed. R. Civ.
8 P. 4(k)(2) (which is discussed further below) and, thus, *Dodur* lends no support to Voodoo's
9 argument that SayGames purposefully directed actions *at California*. *Id*. at *7.  Moreover, Judge
10 Beeler stated that "[t]he parties have not cited, and the court has not identified, a copyright case
11 that addresses definitively the exercise of specific jurisdiction over a foreign defendant whose only
12 action aimed at the U.S. is the distribution of a mobile application to consumers (including U.S.
13 consumers) who obtain it from U.S.-hosted websites such as the Apple App store." *Id*. at *9.  To
14 the extent such a copyright case did not exist before (although arguably the cases cited in
15 SayGames's Motion did address this issue), the *Good Job Games* case certainly does now.
16    In *Good Job Games*, Judge Chen rejected the premise that SayGames's distribution
17 through the Google and Apple app stores conferred personal jurisdiction in California.  *Good Job*
18 *Games* at 5 ("[Plaintiff] has not identified anything unique about California that caused
19 [SayGames] to target this forum state.  In other words, [SayGames] did not target California; it
20 targeted Apple and Google, which happened to be headquartered in California.").  Nor did the
21 court find that any of the other alleged forum-related activity that Voodoo identifies in its
22 Opposition altered this conclusion.  *See id.* at 8-10.  Rather, in dismissing the case on
23 jurisdictional grounds, the court recognized that "[t]o find personal jurisdiction on such a bare
24 showing as in this case would permit '[f]ederal courts sitting in California [t]o assert personal
25 jurisdiction over foreign defendants in wholly foreign disputes.'" *Id.* at 10 (quoting *Doe v. Geller*,
26 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008)).  The law compels the same result here.

B.    **Voodoo's Claims Do Not Arise Out of Conduct in the State**

Although Voodoo's failure to establish that SayGames purposefully directed the alleged activity to California is dispositive of the specific jurisdiction question, Voodoo also fails to demonstrate that its claims arise out of conduct in California. Voodoo's cursory argument on this point merely repeats its argument that SayGames aimed its conduct at California by distributing *Jelly Shift* through Apple and Google. (Opp'n at 12.) As SayGames previously noted, however, the focus is on the conduct that occurred in the forum. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780-82 (2017) (finding no jurisdiction where dispute did not arise out of conduct in state). None of the "relevant conduct" by SayGames took place in California.

C.    **Exercise of Specific Personal Jurisdiction is Not Reasonable**

Finally, Voodoo argues that SayGames has not established that the exercise of personal jurisdiction in this case would not be reasonable. Again, Voodoo simply reiterates its arguments of purposeful direction and asserts—without explanation—that California has significant interest in adjudicating claims between two foreign parties stemming from actions originating in Belarus with harm that Voodoo felt, if anywhere, at home in France. California has little interest in adjudicating these sort of disputes. *See Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty*, 480 U.S. 102, 115 (1987).

D.    **Voodoo's Rule 4(k)(2) Argument Fails**

Notwithstanding the Court's stated interest in hearing the parties' jurisdictional arguments under Rule 4(k)(2) (*see* Tr. at 5:1-2; 9:25-10:1; 18:16-25), Voodoo makes only a passing attempt to argue that exercise of jurisdiction under Rule 4(k)(2) is appropriate here. (Opp'n at 13.) Judge Chen examined this issue in detail, however, and determined that exercising jurisdiction over SayGames under the current circumstances would not comport with due process. *See Good Job Games* at 11-15. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

In analyzing the seven factors the Ninth Circuit considers when determining whether exercising jurisdiction over a nonresident defendant comports with "fair play and substantial justice," the *Good Job Games* court first noted that the "purposeful interjection" prong, which is rarely met, was not satisfied because SayGames lacked "extensive" United States contacts. *See Good Job Games* at 12; *see also Holland Am. Line*, 485 F.3d at 462 (noting, in 2007, that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule" and in the "few cases in which our sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction," defendants have had "extensive contacts to this country"). Judge Chen next found that SayGames, which is based in Belarus, would have significant difficulty defending itself in the United States, particularly as none of the witnesses are present in the forum, and that this action might be more efficiently heard in Belarus. *Good Job Games* at 12-13. Finally, after analyzing the remaining factors largely in SayGames's favor (*id*. at 13-14), the court noted that Belarus or Turkey—where the plaintiff in that case was based—both offered appropriate alternative forums for the litigation, as both are signatories to the Berne Convention. *Id.* at 15. France, Voodoo's home country (Compl. ¶ 7), is also a signatory to the Berne Convention. *See* https://www.wipo.int/treaties/en/ShowResults.jsp?treaty_id=15.Case. Indeed, in light of Voodoo's prior attempts to argue that French law applies (*see* Levy Decl., Exs. 19-20), Voodoo cannot now argue that no alternative forum exists.

In short, although Voodoo identifies various United States activity, none presents the sort of "extensive contact" envisioned by Fed. R. Civ. P. 4(k)(2). Further, following the series of recent Supreme Court decisions that significantly narrowed the constitutional limits of personal jurisdiction over a foreign defendant, including *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and its progeny, Rule 4(k)(2) may no longer be a constitutionally valid method to establish jurisdiction over a foreign defendant. *See, e.g.*, *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1338 n.9 (S.D. Fla. 2016) ("In the wake of the Supreme Court's decision in *Daimler*, it appears unlikely that general jurisdiction over a foreign defendant could ever be available under 4(k)(2)."). Accordingly, there is no basis for personal jurisdiction over SayGames in this Court and this action should be dismissed.

### III. VOODOO'S JURISDICTIONAL DISCOVERY REQUEST SHOULD BE DENIED

Voodoo renews its request for jurisdictional discovery in a footnote in the Opposition, which the Court permitted "if you stand on your current discovery requests." (Tr. at 29:18-19.) The Court previously denied Voodoo's request for jurisdictional discovery, without prejudice, and cautioned that it was overly broad. (ECF No. 38 at 2.) While the Court indicated that Voodoo could renew its request in its Opposition, it advised Voodoo to narrow the scope. (Tr. at 27:1-6.) Voodoo could have chosen to tailor its overly broad requests or attempt to overcome its prior shortcomings of failing to identify what facts it believed it could uncover in discovery and why the requested discovery would impact the jurisdictional analysis, but did not do so. (*See* ECF No. 30 (identifying flaws in Voodoo's discovery requests).)

Now, with the full benefit of the parties' briefing on the motion to dismiss, the Court should deny Voodoo's renewed request. Voodoo has identified no anticipated discovery that would yield further support for its argument. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) *cert. denied*, 555 U.S. 1171 (2009) (upholding denial of jurisdictional discovery where the request "was based on little more than a hunch that it might yield jurisdictionally relevant facts"). It was for this reason that Judge Chen denied a similar request in *Good Job Games* for failure to identify how or why the requested discovery would change the analysis. *See Good Job Games* at 15-16. Voodoo's request should likewise be denied here.

### IV. VOODOO FAILS TO STATE A CLAIM AGAINST SAYGAMES

#### A. <u>Voodoo Fails to State a Plausible Claim for Copyright Infringement</u>

Voodoo's claims also fail on the merits. In its Motion, SayGames demonstrated that Voodoo's copyright infringement claim failed both for failure to plead access and for lack of substantial similarity.

While Voodoo speculates that SayGames had access to *Shape Shifter 3D* (Compl. ¶ 11), the "bare possibility of access"—which is all that Voodoo alleged—"is insufficient to sustain a copyright infringement claim." *Seals-McClellan v. Dreamworks, Inc.*, 120 Fed. App'x 3, 4 (9th Cir. 2004). In its Opposition, Voodoo does nothing more than repeat the allegation that *Shape Shifter 3D* was available for sale through the Apple App Store. Opp. at 15 (citing Compl. ¶ 19)).

1  However, "[p]osting something on the internet does not by itself constitute wide dissemination"
2  and is insufficient to allege access. *Weiss v. DreamWorks SKG*, No. CV14-02890-DDP, 2015 WL
3  12711658, at *5 (C.D. Cal. Feb. 9, 2015) (finding that plaintiff's allegation that she posted her
4  works online was insufficient to allege access because "[p]osting something on the internet does
5  not by itself constitute wide dissemination"). Moreover, the Complaint alleges that *Shape Shifter*
6  *3D* was available for only two weeks before SayGames released *Jelly Shift* (Compl. ¶¶ 19, 27),
7  undermining Voodoo's arguments of widespread dissemination. Voodoo's claim thus fails for this
8  reason.
9       Voodoo also has not adequately alleged substantial similarity. SayGames's Motion
10 demonstrated that there was no similarity between the works with respect to the *protected*
11 *elements* of *Shape Shifter 3D*. (Mot. at 12-18.) In Opposition, Voodoo attempts to escape
12 dismissal by altering its copyright infringement claim in two fundamental ways: (1) by recasting
13 the alleged similarity between *Jelly Shift* and *Shape Shifter 3D* as being to "the whole of the
14 expressive work that includes the combination, organization, and presentation" of unprotectable
15 game elements (Opp'n at 18); and (2) asserting copyright infringement for the first time in an
16 advertising video in which Voodoo does not even allege an ownership interest or copyright
17 registration. Neither of these modifications save Voodoo's copyright infringement claims.
18      1.    *Voodoo Does Not Plausibly Plead Substantial Similarity in the Games*
19      Voodoo now appears to argue that the similarity between the parties' games is in the
20 alleged combination of unprotectable elements. (Opp'n at 16-18.) The Complaint makes only a
21 passing reference to the combination of elements, however (Compl. ¶ 40), alleging instead that
22 SayGames infringed "the original, creative expression and *unique elements* of *Shape Shifter 3D*—
23 *i.e.,* the player interface, level designs, avatar, color combinations, specific shapes and objects,
24 graphic and sound effects, and game progression, and other unique audio-visual elements . . . ."
25 (Compl. ¶ 3 (emphasis added).)
26      Voodoo attempts to support the notion that there can be substantial similarity in a
27 combination of unprotectable elements by mischaracterizing the law. It argues that the Ninth
28 Circuit, in *L.A. Printex Indus., Inc. v. Aeropostale*, Inc., 676 F.3d 841 (9th Cir. 2012), rejected the

idea that a court should "dissect" out unprotectable elements before reviewing the work as a whole for substantial similarity. *See id.* at 849. The *L.A. Printex* court, however, did not reject the dissection approach or otherwise overrule *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994), which requires that a court separate protectable and unprotectable elements before a work is considered as a whole. *See id.* at 1446. The Ninth Circuit merely confirmed that the Second Circuit's test "differ[ed] somewhat from [its] two-part extrinsic/intrinsic test for substantial similarity," but that it would use this standard to "guide its reasoning, at least *in the context of fabric designs*." *L.A. Printex*, 676 F.3d at 850 (emphasis added). *Apple Computers* and its dissection approach thus remains the proper analysis. Moreover, *L.A. Printex,* which involved a motion for summary judgment (*see id.*), did not alter the fact that, "[a]t the pleading stage, [the Ninth Circuit] considers only the extrinsic test," which requires that, as a first step, the district court "'filter out' the unprotectable elements of the plaintiff's work." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir.) *cert. denied*, 140 S.Ct. 456 (2019) (citation omitted).

Applying this test, the unprotectable elements of *Shape Shifter 3D* are filtered out, including the idea of a navigational game and any expression that necessarily accompanies it, such as an avatar, path, and obstacles, as well as the overall rules, process, and mechanics of game play. (Mot. at 12-15.) What remains are the limited original expressive elements that actually form the basis of Voodoo's infringement claim. As indicated in SayGames' Motion, however, aside from claiming that *Jelly Shift* is a "copycat" (Compl. ¶ 28) and alleging in conclusory fashion that "*Jelly Shift* copies Voodoo's protectable expressions" (*id*. ¶ 38), the Complaint does not plead the actual similarities between *Shape Shifter 3D*'s *protected* expression and *Jelly Shift*. Nor does the Opposition address the fundamental differences in the games' respective player interfaces (Mot. at 17), level designs (*id.*), graphics (*id.* at 17-18) and overall game progression (*id.* at 18), discussed in SayGames's Motion. Moreover, even the arrangement of unprotectable elements flows from the fact that *Shape Shifter 3D* is a simple navigational game with limited potential combinations.

Tellingly, although the Voodoo now argues that the "striking similarity of game elements" are most evident "when viewed in the aggregate and in the context of the entire game from the

perspective of a user playing *Shape Shifter 3D*" (Opp'n at 18), it fails to provide the Court with the works at issue.  Voodoo is content to rely on its conclusory allegations or, at most, the Court's review of a few still images of the games curated by Voodoo, which represent a fraction of the entire games.  The only way for the Court to evaluate the sufficiency of the similarity allegations relating to the entire game, however, is to view the game itself, which is regularly undertaken by courts in evaluating the sufficiency of substantial similarity allegations on a motion to dismiss a copyright infringement claim.  *See, e.g.*, *Silas v. Home Box Office, Inc.*, 201 F. Supp. 3d 1158, 1183 (C.D. Cal. 2016), *aff'd*, 713 Fed. App'x 626 (9th Cir. 2018) (rejecting plaintiffs' allegations of purported similarities between the works because, after comparing the works themselves on a motion to dismiss, the court found "the actual similarities are between unprotectable elements; the protectable elements of the works are significantly different"); *Spry Fox, LLC v. LOLApps, Inc.*, No. 2:12-cv-00147-RAJ, 2012 WL 5290158, at *1-2 (W.D. Wash. Sept. 18, 2012) (noting that the most effective way for a court to compare similarities between video games is to play them).

Because the games are only playable on certain mobile platforms, SayGames is prepared to lodge an iPhone with the Court that is pre-loaded with both games if the Court is willing to receive it.  *See* Whitney Decl. ¶ 2.  As addressed in the Motion, upon review of the games at issue, the Court can readily assess that there is no actionable similarity between protectable expression of *Shape Shifter 3D* and *Jelly Shift*, requiring dismissal of Voodoo's copyright infringement claim.

### 2. *Voodoo Does Not Properly Allege Infringement of the Video Advertisement*

Voodoo argues briefly in its Opposition that "SayGames' infringement argument omits any discussion as to its use of Voodoo's video advertisement that marketed *Shape Shifter 3D*."  (Opp'n at 19.)  Yet, Voodoo did not plead infringement of this video in its Complaint.  Count I of the Complaint (Copyright Infringement) instead claimed that "SayGames has infringed Voodoo's copyrights by, without limitation, copying, publicly displaying, and distributing *Jelly Shift*, without authorization from Voodoo." (Compl. ¶ 67.)  There is no allegation that allegedly copying portions of Voodoo's advertising video is part of Voodoo's copyright infringement claim.  Indeed, the advertising video is mentioned only as arising under Voodoo's Lanham Act and state law false advertising claims.  (Compl. ¶ 81 ("SayGames intentionally and falsely misrepresented

to potential customers that it is, or is somehow associated and/or affiliated with, Voodoo or *Shape Shifter* 3D by reposting Voodoo's exact advertisement video in connection with its own advertising, marketing, distribution, and/or offering for download its own *Jelly Shift* game."); *see also id.* ¶ 86.)  Nor has Voodoo even alleged ownership of a copyright in the advertising video or that it registered the copyright in the video—both prerequisites for infringement.  *See Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 586 U.S. __, 139 S.Ct. 881, 888 (2019) (holding that a plaintiff must have a certificate of registration before filing a copyright infringement action).

Accordingly, Count I should be dismissed with prejudice.

### B. Voodoo Fails to State a Plausible Claim for Trade Dress Infringement

Voodoo further claims trade dress infringement with respect to the *Shape Shifter 3D* icon.  In its Motion, SayGames demonstrated that Voodoo had not alleged any distinctive elements of its trade dress or that it had acquired secondary meaning.  (Mot. at 19.)  Voodoo attempts to cure this deficiency by identifying the trade dress as consisting of "inherently distinctive" colored blocks and gates.  (Opp. at 20-21 (citing Compl. ¶ 33).)  This sort of generic combination of shapes and colors, however, cannot be inherently distinctive and is thus ripe for dismissal at the pleading stage without a plausible allegation of secondary meaning.  *See, e.g.*, *Stiles v. Wal-Mart Stores, Inc.*, No. CV2:14-2234-GEB-CMK, 2015 WL 5173060, at *3 (E.D. Cal. Sept. 2, 2015), *report and recommendation adopted*, No. 2:14-CV-2234-GEB-CMK, 2016 WL 696602 (E.D. Cal. Feb. 22, 2016) (dismissing trade dress claim based on coloring and packaging without allegation that design had acquired secondary meaning).

Regardless, Voodoo has not overcome the bigger shortcoming that a side-by-side comparison of the games' icons confirms that consumer confusion is not likely as a matter of law.  (Mot. at 19.)  Voodoo also does not refute that its own Complaint shows that consumers were not confused by the two icons and were aware that the products were distinct.  (Compl. ¶ 42.)  Accordingly, Count II should also be dismissed with prejudice.

### C. Voodoo Fails to State a Plausible Claim for False Advertising

SayGames's Motion argues that Voodoo failed to identify the allegedly false statement that underlies its false advertising claim or what was false about the statement.  (Mot. at 21.)

Voodoo's Opposition does little to clarify its claim, stating only that "SayGames' advertisement depicting a product as its own, when it was not, is literally false." (Opp'n at 23.) The Complaint, however, does not identify any commercial advertisement in which SayGames claimed Voodoo's product as its own—indeed, the Complaint does not identify a SayGames advertisement at all. It merely shows two still images side by side, devoid of any context or false statement of fact. (Compl. ¶ 30.) This allegation falls well short of the Rule 9(b) heightened pleading requirements that Voodoo concedes are applicable to its claim. (Opp'n at 22.)

Voodoo cites to *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prods., Inc.*, 411 F. Supp. 3d 905 (N.D. Cal. 2019) as the primary support for its claim. In that case, however, the defendant actually altered the plaintiff's Amazon listing to claim that particular products were manufactured by defendant, when they were, in fact, manufactured by plaintiff. *Id.* at 911. As noted, Voodoo's Complaint makes no allegation that SayGames altered Voodoo's advertisements in any way or claimed that *Shape Shifter 3D* was developed or sold by SayGames.

All that the Complaint identifies are stills of a video, but even these allegations are inconsistent. The Complaint claims in one paragraph that SayGames copied the entire video (Compl. ¶ 30) and in the next that it merely approximated certain elements. (*Id.* ¶ 31.) There is therefore no affirmative misstatement alleged in the Complaint to give rise to a Lanham Act false advertising claim. *See Ariix, LLC v. NutriSearch Corp.*, No. CV17-320-LAB-BGS, 2018 WL 1456928, at *7 (S.D. Cal. Mar. 23, 2018) (dismissing false advertising claim for failure to allege any false statement). Moreover, a Lanham Act claim based solely on the alleged reproduction of copyrighted material is preempted by the Copyright Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-37 (2003) (claims arising from unauthorized use of copyrightable works are within the exclusive domain of the Copyright Act, and are not actionable under the Lanham Act).

Voodoo also fails to allege the required element that the purported misstatement was material. Voodoo does not argue otherwise, but claims instead that materiality is presumed for literally false statements. (Opp'n at 24.) *First*, as indicated above, Voodoo does not allege a literally false statement, and therefore would not be entitled to such a presumption even if it

existed. At most, Voodoo is arguing that SayGames is *implying* something false in its use of the video, which is not literal falsity. *Second*, even if it were literally false, case law out of this District suggests that current Ninth Circuit law rejects the presumption of materiality. *See LivePerson, Inc. v. [24]7.ai Inc.*, No. CV-17-01268, 2018 WL 5849025, at *6 (N.D. Cal. Nov. 7, 2018) (rejecting presumption of materiality in the face of literal falsity because "the majority of circuits, including the Ninth Circuit, require a separate showing of materiality for literally false statements"); *Clorox Co. v. Reckitt Benckiser Grp. PLC,* 398 F. Supp. 3d 623, 644 n.6 (N.D. Cal. 2019) (indicating that the Ninth Circuit no longer affords a presumption of materiality for literally false statements). Because Voodoo made no plausible allegation of materiality, its claim should fail for this additional reason and the others identified in the Motion. Accordingly, Count III should be dismissed with prejudice.

### D.  Voodoo's State Law Claims Also Fail

Finally, Voodoo's state law claims also fail. Voodoo admits that its state law false advertising claim is "substantially congruent to claims made under the Lanham Act." (Opp. at 24 (quoting *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 860 (N.D. Cal. 2015))). It therefore also falls with that claim. Similarly, because Voodoo fails to identify any "unlawful" or "unfair" act that is not duplicative of its Lanham Act claim or preempted by the Copyright Act, its claim for unfair competition also fails. (Mot. at 22-23.) Accordingly, Counts IV and V should be dismissed with prejudice.

## V.  CONCLUSION

For the foregoing reasons and the reasons stated in its Motion, SayGames respectfully requests that the Court dismiss the Complaint in its entirety.

DATED: May 14, 2020            FRANKFURT KURNIT KLEIN + SELZ PC

By:   */s/ Craig B. Whitney*
      Craig B. Whitney
      Attorneys for Defendant SayGames, LLC