**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| VOODOO SAS,<br><br>        Plaintiff,<br><br>    v.<br><br>SAYGAMES LLC,<br><br>        Defendant. | Case No.  19-cv-07480-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION WITHOUT LEAVE TO AMEND; AND DISMISSING CASE**<br><br>[Re:  ECF 22] |

This lawsuit arises out of a copyright dispute between two foreign mobile game app developers.  Plaintiff Voodoo SAS ("Voodoo") is a French company with its principal place of business in Paris, France.  Defendant SayGames LLC ("SayGames") is a Belarusian company with its principal place of business in Minsk, Belarus.  Neither company maintains offices in the United States.

SayGames moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the briefing, the relevant legal authorities, and the oral argument of counsel presented at the hearing on May 28, 2020.  For the reasons discussed below, the motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND for lack of personal jurisdiction, and the case is DISMISSED.

**I.     BACKGROUND**

On May 23, 2019, Voodoo released *Shape Shifter 3D* on the Apple App Store.  Compl. ¶ 19, ECF 1.  In the game, the player moves an avatar along a 3D scrolling path toward a finish line, navigating obstacles such as gates, walls, and bridges.  Compl. ¶ 20.  The player also manipulates the avatar to collect tokens along the way, which can be used to unlock rewards.  *Id.*  The object of

1 the game is to reach the finish line while avoiding obstacles and collecting as many tokens as

2 possible. *Id.* Voodoo owns a valid, registered United States copyright in *Shape Shifter 3D*.

3 Compl. ¶ 22. Since its launch, *Shape Shifter 3D* has been successful, maintaining a 4.6-star rating

4 on the Apple App Store based on nearly 700 reviews. Compl. ¶ 23.

5 SayGames released *Jelly Shift* on the Apple App Store on June 7, 2019. Compl. ¶ 27.

6 SayGames later released *Jelly Shift* on the Google Play Store on August 13, 2019. *Id.* Voodoo

7 claims that *Jelly Shift* is "a clone of *Shape Shifter 3D* that incorporates *Shape Shifter 3D's*

8 protectable and distinctive elements." Compl. ¶ 2. Voodoo also claims that SayGames copied the

9 "packaging" of *Shape Shifter 3D*, meaning the icon that resides on the device screen, duplicating

10 the distinctive design and coloration of *Shape Shifter 3D's* icon. Compl. ¶ 4.

11 SayGames allegedly makes a practice of identifying popular mobile game apps and then

12 cloning them. Compl. ¶ 5. Voodoo claims that *Jelly Shift* is only one of several games that

13 SayGames has copycatted from Voodoo in order to profit from Voodoo's original creative work.

14 Compl. ¶¶ 5-6. Voodoo filed suit against SayGames in this district on November 13, 2019,

15 asserting claims for: (1) Copyright Infringement under 17 U.S.C. §§ 101, *et seq.*; (2) Trade Dress

16 Infringement under the Lanham Act; (3) False Advertising under the Lanham Act; (4) False

17 Advertising under California Business & Professions Code §§ 17500 *et seq.*; and (5) Unfair

18 Competition under California Business & Professions Code §§ 17200 *et seq.*

19 SayGames' moves to dismiss for lack of personal jurisdiction and failure to state a claim.

20 **II.   LEGAL STANDARDS**

21   **A.   Rule 12(b)(2) – Lack of Personal Jurisdiction**

22 A party may challenge the Court's personal jurisdiction over it by bringing a motion to

23 dismiss under Federal Rule of Civil Procedure 12(b)(2). When a defendant raises a challenge to

24 personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.

25 *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). The plaintiff may meet that burden by

26 submitting affidavits and discovery materials. *Id.* Such evidence must be admissible. *See Lavinia*

27 *Aircraft Leasing, LLC v. Piper Aircraft Inc.*, No. CV-16-02849-PHX-DGC, 2017 WL 1326140, at

28 *3 (D. Ariz. Apr. 11, 2017). "Where, as here, the defendant's motion is based on written materials

1  rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of
2  jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (quotation marks
3  and citation omitted). "[T]he plaintiff cannot simply rest on the bare allegations of its complaint,"
4  but the uncontroverted allegations in the complaint must be accepted as true and factual disputes
5  created by conflicting affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred
6  Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotation marks and citation omitted).

### B. Rule 12(b)(6) – Failure to State a Claim

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

SayGames argues that dismissal is required under Rule 12(b)(2) because the Court lacks personal jurisdiction over it, and that dismissal also is warranted under Rule 12(b)(6) because Voodoo has failed to state a claim upon which relief may be granted. "[J]urisdictional questions ordinarily must precede merits determinations in dispositional order." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). "Dismissal short of reaching the merits means that the court will not proceed at all to an adjudication of the cause." *Id.* (quotation marks and citation omitted). Following this guidance, the Court first takes up SayGames' Rule 12(b)(2) challenge to personal jurisdiction. Because that issue is dispositive, as discussed below, the Court does not reach SayGames' Rule 12(b)(6) arguments.

Where no applicable federal statute governs personal jurisdiction, "the law of the state in which the district court sits applies." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). "California's long-arm statute allows courts to exercise

3

1  personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the
2  United States Constitution." *Id*. "[D]ue process requires that the defendant 'have certain
3  minimum contacts' with the forum state 'such that the maintenance of the suit does not offend
4  traditional notions of fair play and substantial justice.'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l*
5  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks and citation omitted)).

6  A federal district court may exercise either general or specific personal jurisdiction over a
7  nonresident defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 127-28 (2014). General
8  jurisdiction exists when the defendant's contacts "are so continuous and systematic as to render
9  [it] essentially at home in the forum State." *Id*. at 139 (quotation marks and citation omitted). In
10 contrast, specific jurisdiction exists when the defendant's contacts with the forum state are more
11 limited, but the plaintiff's claims arise out of or relate to those contacts. *Id*. at 128.

12 Voodoo has the burden of establishing that jurisdiction is proper. *See Ranza*, 793 F.3d at
13 1068. Voodoo argues that this Court has specific personal jurisdiction over SayGames under
14 California's long-arm statute. In the alternative, Voodoo argues that the Court has jurisdiction
15 over SayGames under Federal Rule of Civil Procedure 4(k)(2), sometimes referred to as the
16 federal long-arm statute. *See Goes Int'l, AB v. Dodur Ltd.*, No. 3:14-CV-05666-LB, 2015 WL
17 5043296, at *7 (N.D. Cal. Aug. 26, 2015). The Court addresses these two asserted bases for
18 personal jurisdiction in turn.

19  **A.    Specific Personal Jurisdiction**

20 The Ninth Circuit has established a three-prong test for whether a court can exercise
21 specific personal jurisdiction: (1) the defendant must have "either purposefully availed itself of
22 the privilege of conducting activities in California, or purposefully directed its activities toward
23 California," thereby "invoking the benefits and protections of its laws"; (2) the claim must arise
24 out of or relate to the defendant's forum-related activities; and (3) the exercise of jurisdiction must
25 be reasonable, *i.e.* it must comport with fair play and substantial justice. *Schwarzenegger*, 374
26 F.3d at 802. The plaintiff bears the burden on the first two prongs. *Id*. "If the plaintiff fails to
27 satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id*. "If
28 the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the

defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id*. (quotation marks and citation omitted).

### 1. Purposeful Availment / Purposeful Direction

Purposeful availment and purposeful direction are two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis generally is used in suits sounding in contract, while a purposeful direction analysis generally is used in suits sounding in tort. *Id*. The Ninth Circuit has held that where the plaintiff "has alleged copyright infringement, a tort-like cause of action, purposeful direction is the proper analytical framework." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quotation marks and citation omitted).

In the Ninth Circuit, purposeful direction analysis is governed by the three-part "effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015). "Under this test, a defendant purposefully directed his activities at the forum if he: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id*. (quotation marks and citation omitted). In applying this test, the court "must 'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id*. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*.

#### a. Intentional Act

The meaning of the term "intentional act" is essentially the same as in the context of intentional torts, meaning that "the defendant must act with the intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214. Voodoo alleges that SayGames both copied protected expression in Voodoo's *Shape Shifter 3D* game app and duplicated the distinctive design and coloration of *Shape Shifter 3D's* icon. *See* Compl. ¶¶ 4, 61-68, 75-77. The Court concludes that these allegations are sufficient to satisfy the intentional act requirement, and SayGames does not argue otherwise.

### b. Expressly Aimed

"The second prong of our test, express aiming, asks whether the defendant's allegedly tortious action was expressly aimed at the forum." *Picot*, 780 F.3d at 1214 (internal quotation marks and citation omitted). Voodoo asserts that SayGames expressly aimed its infringing conduct at California by: (1) providing its website in English and linking visitors to the United States versions of the Apple App Store; (2) entering into agreements with California-based companies Apple and Google that expressly incorporate California law, and incorporating California law into its own privacy policy and terms of use; (3) providing *Jelly Shift* users with advertisements intended for a United States audience; (4) targeting the United States market; and (5) profiting from Californians by means of *Jelly Shift* downloads and in-app game purchases and ads. Voodoo also contends that SayGames' statements in pre-litigation correspondence regarding the applicability of U.S. copyright law constitute a concession of personal jurisdiction in California. SayGames argues that Voodoo has failed to identify jurisdictional conduct aimed at California, and that the pre-litigation correspondence did not concede personal jurisdiction.

At most, the bulk of this conduct relates to SayGames' distribution of its game app in the United States generally, not California in particular. A foreign company's use of English on its website does not indicate that it is targeting any particular state, or indeed, the United States at all. *See Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 9 (D.D.C. 2009) ("[T]he Court is not persuaded that the website's use of English denotes any targeting of D.C. residents. English is widely-used across the globe, including in London where HB has an office."). Similarly, linking website visitors to the Apple App Store and targeting the United States market does not suggest express aiming at California.

The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix*, 647 F.3d at 1229. On the one hand, "maintenance of a passive website alone cannot satisfy the express aiming prong." *Id.* (quotation marks and citation omitted). On the other hand, "operating even a passive website in conjunction with something more – conduct directly targeting the forum – is sufficient." *Id.* (quotation marks and citation omitted).

6

In *Mavrix*, the plaintiff was a Florida-based celebrity photo agency that paid photographers for candid photos of celebrities, which it then sold to publications specializing in celebrity news, such as *People* and *Us Weekly* magazines. *Mavrix*, 647 F.3d at 1221-22. Many of the celebrities lived and worked in Southern California. *Id.* at 1222. The defendant was an Ohio corporation that operated a celebrity gossip website featuring photo galleries, videos, and short articles. *Id.* The plaintiff brought a copyright suit against the defendant in California, alleging that the defendant had reposted copyrighted celebrity photos on its website. *Id.* The California district court dismissed the suit for lack of personal jurisdiction, and the Ninth Circuit reversed. The Ninth Circuit found that the express aiming prong of the purposeful direction analysis was satisfied because the defendant "operated a very popular website with a specific focus on the California - centered celebrity and entertainment industries," and that the defendant had a substantial California viewer base. *Id.* at 1230. The Ninth Circuit concluded that the California "audience is an integral component of Brand's business model and its profitability." *Id.*

Those facts are distinguishable from the present case, in which the *Jelly Shift* game is not about or focused on California. Voodoo's assertion that SayGames has profited from Californians by means of *Jelly Shift* downloads and in-app game purchases and ads would apply equally to any locale in which the app is sold. There is no suggestion on this record that the California market in particular is an "integral component" of SayGames' business model and profitability, as was the case in *Mavrix*. To the contrary, SayGames presents evidence that 80% of *Jelly Shift* downloads are from outside the United States. *See* Chandou Decl. ¶ 11, ECF 43-22.

Voodoo points to SayGames' privacy policy and terms of use for *Jelly Shift*, both of which refer to California law. *See* Levy Decl. ¶¶ 26-27, ECF 43-1. The terms of use contain a release of liability and provide that California residents expressly waive California Civil Code § 1542, which imposes limitations on release of certain rights. *See* Levy Decl. ¶ 27 & Exh. 17. The privacy policy includes a section titled "Rights of California Residents," which addresses requirements of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 et seq. *See* Levy Decl. ¶ 26 & Exh. 16. While these references show that SayGames knew *Jelly Shift* might be purchased by California residents, they do not indicate that SayGames specifically aimed *Jelly*

7

*Shift* at California residents. As SayGames' counsel argued at the hearing, terms of use commonly contain provisions specifying the application of particular laws that the company believes will be most beneficial to it. At the hearing, Voodoo's counsel cited *Quigley v. Guvera IP Pty Ltd.*, No. C-10-03569 CRB, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010), for the proposition that use of a California-specific privacy policy can satisfy the effects test. In *Quigley*, the district court also relied on the fact that the defendant also "us[ed] a girl from California as an example to explain the payment model" on the website. *Id.* The *Quigley* court concluded from these facts that the defendant intentionally targeted consumers in California. *See id.* In the present case, there are no similar facts suggesting targeting of California residents. In fact, SayGames' privacy policy also includes a section titled "Rights of EEU Residents." *See id.* In short, the Court is not persuaded that the references to California law in SayGames' privacy policy and terms of use suggest express aiming at California.

The Court has a similar view regarding California choice-of-law, personal jurisdiction, and venue provisions contained in SayGames' agreements with California-based Apple and Google. A judge in this district recently had occasion to consider the significance of such agreements in another case against SayGames based on nearly identical facts, *Good Job Games Bilism Y26 azilim Ve Parzarlama A.S. v. SayGames LLC*, No. 19-cv-07916-EMC. In that case, Turkish company Good Job Games sued Belarusian company SayGames for copyright infringement in the Northern District of California, alleging – as in the present case – that SayGames had released a copycat version of a game app. Judge Edward M. Chen granted SayGames' motion to dismiss for lack of personal jurisdiction. *See* Good Job Games Dismissal Order, ECF 30 in No. 19-cv-07916-EMC. Judge Chen concluded that SayGames "did not direct its intentional acts towards California simply by distributing its game through Apple and Google." Good Job Games Dismissal Order at 10. Judge Chen also determined that SayGames' "contracts with third parties about choice of law, jurisdiction, and venue have nothing to do with whether it directed its tortious activities towards an entity not a party to those agreements." *Id.* at 9. This Court agrees with Judge Chen's analysis, which is consistent with other district court decisions within the Ninth Circuit. *See, e.g., Bibiyan v. Marjan Television Network, Ltd.*, No. CV181866DMGMRWX, 2019 WL 422664, at *4-5 (C.D.

Cal. Feb. 4, 2019) (express aiming requirement not met where defendant posted plaintiff's videos on website hosted and serviced by a California entity, and permitted downloads of plaintiff's videos on mobile app available through Apple App Store and Google Play); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012) (express aiming requirement not met where defendant used accounts on California-based Internet companies such as Facebook to direct traffic to his websites).

Voodoo argues that SayGames' agreements with Apple and Google show express aiming at California, relying on *Goes Int'l, AB v. Dodur Ltd.* In that case, Swedish company Goes sued Chinese game developer Dodur and its shareholders for copyright infringement, claiming that Dodur copied Goes' game app. *Goes*, 2015 WL 5043296, at *1. On the defendants' motion to dismiss for lack of personal jurisdiction, the district court identified the relevant issue as "the exercise of specific personal jurisdiction over a foreign defendant whose only action aimed at the U.S. is the distribution of a mobile application to consumers (including U.S. consumers) who obtain it from U.S.-hosted websites such as the Apple App store." *Id.* at *9. Voodoo asserts that the district court found this conduct sufficient to establish specific personal jurisdiction in *California*. *See* Opp. at 11, ECF 43. However, the issue in *Goes* was whether the foreign defendant's distribution of an app through websites such as the Apple App Store was sufficient to establish *nationwide* jurisdiction under Rule 4(k)(2). *See Goes*, 2015 WL 5043296, at *7. The *Goes* plaintiff did not argue, and the district court did not consider, whether such distribution was sufficient to establish specific personal jurisdiction in California. Thus, while *Goes* certainly is relevant to Voodoo's alternative assertion of nationwide jurisdiction under Rule 4(k)(2), discussed below, the case does not support Voodoo's assertion of specific personal jurisdiction in California.

Finally, Voodoo argues that SayGames has conceded the existence of personal jurisdiction in California, citing pre-litigation correspondence between Voodoo and SayGames regarding Voodoo's DMCA takedown notice of Jelly Shift. *See* Levy Decl. ¶ 30 and Exhs. 19-20, ECF 43-1, 43-20, 43-21. SayGames' counsel asserted that Voodoo's claims are subject to U.S. copyright law. The two letters in question speak to the applicable law, not personal jurisdiction. Judge Chen reached the same conclusion when presented with the same correspondence in the context of

1  a motion to alter judgment in the *Good Job Games* case. Good Job Games argued that the

2  correspondence was new evidence that SayGames is subject to personal jurisdiction in this district.

3  Judge Chen stated, "This Court is not persuaded that the prelitigation letters written by SG in

4  *Voodoo* constitute an admission that personal jurisdiction applies in this case (or in that case). A

5  concession was to choice of law; choice of law is distinct from the question of personal

6  jurisdiction." *Good Job Games Bilism Yazilim Ve Pazarlama A. v. SayGames LLC*, No. 19-CV-

7  07916-EMC, 2020 WL 3414659, at *2 (N.D. Cal. June 22, 2020).

8  In summary, Voodoo has failed to show that SayGames expressly aimed its alleged

9  tortious conduct to California.

### c.  Causing Harm Likely to be Suffered in Forum State

The Ninth Circuit has "not decide[d] whether the effects test requires that the brunt of the harm have occurred within the forum state, or merely that some significant amount of harm have occurred there." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002). Even under the lesser standard, it is not clear that Voodoo suffered harm in California. The complaint alleges that Voodoo suffered economic harm in the form of lost revenue, and it seeks to recover SayGames' allegedly unjust profits. *See* Compl. ¶¶ 69-72, 78-79. In its opposition to the motion, Voodoo asserts that "SayGames' ongoing willful infringement and unfair competition threatens Voodoo's business and revenue in California by, *inter alia*, diverting consumers from Voodoo's mobile games to SayGames' copycat versions." Opp. at 11-12. Because Voodoo is a Paris-based company, logic would dictate that any harm from lost revenues was suffered in Paris.

Voodoo cites *Mavrix* for the proposition that a copyright holder may be harmed not only where it maintains its principal place of business, but also where the infringement occurred. The *Mavrix* court recognized that "in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix*, 647 F.3d at 1231. The Ninth Circuit found the appropriate circumstances to exist with respect to the celebrity photos at issue because "[a] substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications such as *People* and *Us Weekly* in order to see the photos." *Id.* at 1231-32. The Ninth Circuit

determined that "[b]ecause Brand's actions destroyed this California-based value, a jurisdictionally significant amount of Mavrix's economic harm took place in California." *Id*. at 1232. This analysis was underpinned by the Ninth Circuit's characterization of the California market as particularly valuable when it discussed the express aiming prong. *See id*. at 1231-32. Voodoo has not established that the California market has special significance in this case, such that SayGames' worldwide distribution of *Jelly Shift* through the Apple App Store and Google Play could be viewed as causing harm in California as well as Paris.

Based on the foregoing, the Court concludes that under the effects test, Voodoo has failed to show that SayGames' allegedly infringing conduct was expressly aimed at California.

### 2. Arising out of Forum Activities

Because Voodoo has failed to satisfy the first prong of the *Schwarzenegger* test, the Court need go no further before concluding that Voodoo has failed to meet its burden of establishing specific personal jurisdiction over SayGames. *See Schwarzenegger*, 374 F.3d at 802 (If the plaintiff fails to satisfy either of the first two prongs, "personal jurisdiction is not established in the forum state."). The Court therefore touches on the "arising out of" prong only briefly.

In determining whether a plaintiff's claim arises out of the defendant's forum-related activities, "the Ninth Circuit follows the 'but for' test." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (internal quotation marks and citation omitted). Under this test, Voodoo must show that it would not have suffered an injury "but for" SayGames' California-related conduct. *See id*. Voodoo devotes a scant paragraph to this point, asserting in conclusory fashion that "[b]ut-for SayGames' ongoing and willful infringement and unfair competition, Voodoo would not have suffered nor continue to suffer harm," and "in the absence of SayGames' unlawful conduct, Voodoo would not have suffered injury in California." *See* Opp. at 12. These assertions do not identify SayGames' California-related activities or speak to the issue of whether those California-related activities caused harm to Voodoo. Consequently, Voodoo has failed to meet its burden on this prong.

### 3. Reasonableness

Because Voodoo has failed to satisfy its burden with respect to the first two prongs, the

burden does not shift to SayGames to satisfy the third prong. *See Schwarzenegger*, 374 F.3d at 802 (burden shifts to the defendant to show that exercise of personal jurisdiction would not be reasonable only if the plaintiff satisfies both of the first two prongs).

### 4. Conclusion

The Court therefore concludes that Voodoo has failed to make a *prima facie* showing that SayGames is subject to this Court's specific personal jurisdiction under California's long-arm statute.

### B. Nationwide Jurisdiction under Rule 4(k)(2)

Voodoo argues in the alternative that SayGames is subject to this Court's personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). In order to establish personal jurisdiction under Rule 4(k)(2), the plaintiff must establish three factors. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). "First, the claim against the defendant must arise under federal law." *Id.* "Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction." *Id.* "Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.*

The first factor is satisfied, as Voodoo asserts claims under the Copyright Act and the Lanham Act. The second factor also is satisfied, because SayGames has not identified any other United States forum where it would be subject to personal jurisdiction. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (The second factor of Rule 4(k)(2) analysis is satisfied where the defendant fails to identify a forum state in which it would be subject to personal jurisdiction). Personal jurisdiction under Rule 4(k)(2) therefore turns on Voodoo's showing with respect to the third factor.

"The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland Am.*, 485 F.3d at 462. Thus, (1) the defendant must have purposefully directed its activities toward the United States; (2) the claim must arise out of or relate to the defendant's United States-related activities; and (3) the exercise of jurisdiction must be reasonable. *See Schwarzenegger*, 374 F.3d

at 802 (setting forth test for establishing traditional personal jurisdiction); *Goes*, 2015 WL 5043296, at *7-8 (applying traditional test to Rule 4(k)(2) analysis). "The plaintiff has the burden of satisfying the first two prongs of the test." *Goes*, 2015 WL 5043296, at *7-8. "The burden then shifts to defendants to present a compelling case that the exercise of jurisdiction would be unreasonable." *Id.*

To satisfy the first prong, Voodoo must show that SayGames (1) committed an intentional act, (2) expressly aimed at the United States, (3) causing harm to Voodoo likely to be suffered in the United States. *See Goes*, 2015 WL 5043296, at *8. To satisfy the second prong, Voodoo must show that it would not have suffered an injury "but for" SayGames' United States-related conduct. *Id.* at *13. In the *Goes* case, upon which Voodoo relies heavily, the district court devoted six pages to discussion of the first two prongs. *See id.* at *8-13. Voodoo's discussion comprises two sentences, the first asserting that "SayGames copied Voodoo's work, and has affirmatively exploited the U.S. market for profit," and the second asserting that "[o]n Voodoo's well pled allegations, specific personal jurisdiction is also found here under Rule 4(k)(2)." Opp. at 13-14. These bald assertions are insufficient to satisfy Voodoo's burden.

Because Voodoo failed to satisfy its burden on the first two prongs, the the burden does not shift to SayGames to satisfy the third prong. The Court observes that that Judge Chen determined in *Good Job Games* that exercise of personal jurisdiction over SayGames in the Northern District of California would not be reasonable. *See Good Job Games* Dismissal Order, ECF 30 in No. 19-cv-07916-EMC. Judge Chen applied the seven factor test used by the Ninth Circuit when determining whether exercising jurisdiction over a nonresident defendant comports with fair play and substantial justice, concluding after four pages of discussion that the factors weighed against the exercise of personal jurisdiction. *See id.* at 11-15. While this is a different case involving a different plaintiff, the facts relating to SayGames' contacts with the United States are nearly identical. Accordingly, if this Court were to reach the third prong of the jurisdictional test under Rule 4(k)(2), it likely would find exercise of personal jurisdiction over SayGames to be unreasonable.

Based on the foregoing, the Court concludes that Voodoo has failed to make a *prima facie*

13

showing that SayGames is subject to this Court's personal jurisdiction under the federal long-arm statute, Rule 4(k)(2).

### C. Jurisdictional Discovery

In a footnote, Voodoo states, "should the Court find discovery warranted here to clarify the jurisdictional facts, Voodoo rests on the legal arguments set forth in its Motion for Leave." Opp. at 14 n. 3, ECF 43. Voodoo indicates, however, that in light of the Court's prior guidance regarding the appropriate scope of jurisdictional discovery, Voodoo would submit a tailored discovery plan. *See id.* The prior guidance was given during the April 16, 2020 hearing on Voodoo's unsuccessful motion for leave to take jurisdictional discovery. The Court advised Voodoo that its discovery motion was "way overbroad" and opined that the proposed jurisdictional discovery plan would take a year to complete. Hrg. Tr. 5:3-5, ECF 42. The Court indicated that if it were to grant Voodoo leave to take jurisdictional discovery at all, Voodoo's proposed plan would get "a big haircut." Hrg. Tr. 5:20-21.

To the extent this footnote constitutes a request for leave to take jurisdictional discovery, the request is denied. "A district court is vested with broad discretion to permit or deny discovery, and a decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation marks and citation omitted). At the May 28, 2020 hearing on the motion to dismiss, the Court reiterated that it would not allow the broad scope of jurisdictional discovery requested in Voodoo's prior motion for leave, and stated that it had expected Voodoo to narrow any discovery request made in opposition to the motion to dismiss. Hrg. Tr. 25:15-24, ECF 50. Voodoo did not do so. Even if Voodoo had narrowed its jurisdictional discovery request, Voodoo has not explained how discovery might alter the jurisdictional analysis. On this record, the Court concludes that jurisdictional discovery is not warranted. This conclusion is consistent with Judge Chen's denial of jurisdictional discovery in *Good Job Games*. *See* Good Job Games Dismissal Order at 15-16, ECF 30 in No. 19-cv-07916-EMC.

### D. Dismissal is Appropriate

Because Voodoo has failed to make a *prima facie* showing that this Court has personal jurisdiction over SayGames, the complaint is subject to dismissal under Rule 12(b)(2). Voodoo has not suggested that it could amend its complaint to allege additional jurisdictional facts absent jurisdictional discovery, and such discovery is not warranted for the reasons discussed above.

Accordingly, SayGames' motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND for lack of personal jurisdiction and the action is DIMISSED.

## IV. ORDER

(1) SayGames' motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND for lack of personal jurisdiction, and the action is DISMISSED;

(2) The Clerk shall close the file;

(3) This order terminates ECF 22.

Dated: July 7, 2020

_____
BETH LABSON FREEMAN
United States District Judge